Keating, J.
In December, 1959 respondent, Jayne Estates, Inc., purchased for some $80,000 certain real property on the bay and the ocean sides of Dune Road in Westhampton Beach. At the time, the zoning ordinance permitted apartment house construction, subject to the approval of the Zoning Board of Appeals.
Shortly after the purchase, the Village Board of Trustees proposed an amendment to the zoning map which would prohibit such construction. Before any amendment was enacted, Jayne applied to the Zoning Board for approval of a 52-unit garden apartment project on the ocean side property. The board, while expressing its disapproval of the entire project, considered the application because the new ordinance had not become effective. The board approved the project, but cut its scope down by one half, i.e., to 26 apartments.
Dissatisfied with this decision, Jayne commenced an article 78 proceeding challenging the board’s action. In December, 1960 Special Term (Suffolk County) rendered a decision sustaining Jayne’s third amended petition in which it alleged that the conditions imposed on the grant were burdensome, illegal and arbitrary and, moreover, were deliberately imposed by the board, knowing that such conditions would make it impossible for Jayne to develop the property, thereby achieving the result it admittedly desired, which was to stop the apartment house project.
After this decision, Jayne started negotiations with the village trustees and the Planning Board. The discussions lasted until February, 1963 and resulted in an agreement whereby Jayne would be authorized to build 40 units on the ocean side (a reduction from the 52 requested but an increase over the 26 previously authorized) and a like number on the north side. To make the settlement possible, Jayne purchased additional *421 parcels on the north side for about $9,000. The village trustees passed a resolution authorizing the village attorney to compromise and settle the article 78 proceeding. A formal stipulation was thereafter executed and filed with the Supreme Court, which “ so ordered ” the settlement.
After a period of some delay, in the course of which the number of units on the north side of the project was reduced to 32, Jayne commenced construction expending over $100,000 in construction costs and $15,000 on account of taxes and interest on a mortgage. While the project was proceeding, one Stern, who resided on an adjacent piece of property, instituted a proceeding to have the building permit revoked. At Special Term, the petition was granted on the ground that the trustees had no authority to enter into any such stipulation since the proper party to do so was the Zoning Board of Appeals. The decision was unanimously affirmed by the Appellate Division and leave to appeal was denied by this court (Stern v. Kreiling, 24 A D 2d 704, mot. for lv. to app. den. 16 N Y 2d 488).
While appealing this decision, Jayne sought an amendment to the zoning ordinance to permit garden apartments in the area. The Planning Board recommended approval, but the proposal was never adopted. Instead, a more restrictive amendment was passed limiting all construction to single-family residences.
Thereupon, Jayne made application for the variance, which is the subject of this proceeding. The Zoning Board of Appeals held a hearing on May 13, 1966. At the conclusion of the hearing, the attorney for the board read into the record the board’s determination denying the application.
While sympathetic to petitioner’s plight, Special Term held that the applicant had failed to establish “ unique circumstances” contemplated by the decision in Matter of Otto v. Steinhilber (282 N. Y. 71). The Appellate Division reversed, two Justices dissenting, holding that “unless the variance is granted appellant will suffer unnecessary hardship within the meaning of Matter of Otto v. Steinhilber (282 N. Y. 71) ”.
Jayne’s undisputed evidence is that,, under present zoning regulations, the fair market value of the land is $102,800. Since Jayne paid only $89,000 for its various parcels, if the expenditures in reliance on the invalid permit are excluded, Jayne has *422 suffered little or no hardship. Therefore, the initial question to be resolved here is whether these expenditures are properly includable in the cost basis in determining whether Jayne has suffered unnecessary hardship.
One does not acquire vested rights where one builds in reliance on an invalid permit (Matter of B & G Constr. Corp. v. Board of Appeals of Vil. of Amityville, 309 N. Y. 730; Marcus v. Village of Mamaroneck, 283 N. Y. 325). But it is beyond the exigencies of the situation to say that the expenditures cannot be considered on an application for a variance where the property owner has acted in good faith and there is no reasonable basis to charge him with constructive notice. There is sound reason to distinguish the two situations. After the building permit has been declared invalid, the landowner should gain no vested rights principally because of the damage to the zoning plan and also because he might find it quite feasible to recover his expenditures by using the property for a permitted use. However, where he seeks a variance, he is, in effect, not only arguing that there is no way for him to recover his loss under existing zoning, but also that his proposed use will not be inconsistent with existing uses, and the danger to the existing zoning scheme will be minimized.
Thus, a strictly applied good faith test should be sufficient to deal with the problem. Such a test is implicit in prior decisions. (Matter of Sherman v. Gustafson, 22 N Y 2d 793; Matter of Hoffman v. Harris, 17 N Y 2d 138; Matter of Fina Homes v. Young, 7 N Y 2d 845; Matter of Chasanoff v. Silberstein, 6 N Y 2d 807; Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86; Matter of Badish v. O’Regan, 212 N. Y. S. 2d 632; but see Matter of Midgett v. Schermerhorn, 24 A D 2d 572.)
The problem is not unlike that involved in those cases where a property owner argues that he has obtained a vested right to build for a use no longer permitted under a new or amended zoning law. The test in such cases is whether substantial construction expenses have been incurred prior to the effective date of the new law or, if no building permit has been issued, whether the property was purchased without knowledge of the proposed change and sums were thereafter expended in antici *423 pation of the issuance of the permit, but the municipal officials deliberately delayed the processing of the application and misled and hindered the applicant in order to prevent the accrual of any rights. (Matter of Glenel Realty Corp. v. Worthington, 4 A D 2d 702; Matter of Dubow v. Ross, 254 App. Div. 706; Matter of Harris v. Coffey, 14 Misc 2d 916, affd. 6 A D 2d 898; cf. Matter of Atlas v. Dick, 192 Misc. 843, revd. 275 App. Div. 670, affd. 299 N. Y. 654.) In principle, a similar rule should be applied to the situation here. In particular, if there was good faith reliance on the invalid permit, it should be considered in determining whether Jayne has suffered ‘ ‘ unnecessary hardship ”.
Appellants claim that Jayne was a 11 party to a most flagrant, negotiated, personal zoning permit ” and had engaged in “ illegal activities ”. We find no support in the record here or in the prior proceeding to support any inference of impropriety in the negotiations leading, to the issuance of the subsequently declared void building permit.
The building permit here was not void on its face. The terms of settlement did not contravene the zoning law as it existed at the time of the initial application in early 1960. The difficulty was that the settlement was made with the wrong body. To impose upon Jayne the duty to foresee that the permit was invalid on this ground is to ask that it have greater knowledge of the law than either its own attorneys or the village’s attorney had when they entered into the settlement. The settlement was approved by the Planning Board and the village trustees and was not otherwise opposed by the Zoning Board, which at least had knowledge of the pendency of the proceeding. Thereafter the settlement was, at least in the eyes of a layman, approved by the court when it “ so ordered ’ ’ the settlement. If Jayne is held to have created its own difficulty by relying on the order of the court, procured in good faith, there may never be hardship within the meaning of the statute when a building permit is subsequently held invalid. We conclude, therefore, that the expenditures made in reliance on the invalid permit may properly be considered on the question of the granting of a variance.
Still the question remains whether Jayne has satisfied the “ unnecessary hardship” test (Village Law, § 179-b). In *424 Matter of Otto v. Steinhilber (supra) Judge Finch set forth the key elements for determining whether “ unnecessary hardship ” for a use variance exists (282 N. Y., p. 76): “ [T]he record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.”
In Matter of Crossroads Recreation v. Broz (4 N Y 2d 39), the test of “ reasonable return ” in a use variance case was set forth in the following language (p. 46): “ The only pertinent inquiry is whether the present allowed use is yielding a reasonable return. That it may not be the most profitable return is immaterial” (emphasis in original). (See, also, Matter of Forrest v. Evershed, 7 N Y 2d 256.)
Under present zoning, including acreage and setback requirements, Jayne’s land can be used for no more than eight one-family homes. Therefore, Jayne must sell each lot for more than $25,000 simply to recover its investment. The testimony of Jayne’s expert was undisputed that the lots are not worth anywhere near that amount.
The village argues that the construction expenditures might be recoverable by using the pilings intended for the three apartment buildings to support the one-family residences. The suggestion seems palpably unrealistic, and the record does not indicate how this might be done. Likewise, we find no support for the contention that Jayne might suffer no loss if Jayne built substantial and expensive homes. Jayne objects to any demand that it advance additional money, which it may not have or be able to obtain for such a speculative project. We need not consider this objection since it is extremely improbable that homes can be erected for sale at a price sufficient to permit Jayne to recoup its investment. In any event, the Zoning Board as well as any objecting property owners had ample opportunity to present evidence to support their contention, but chose not to do so. Thus, Jayne’s showing that it will • suffer “ unnecessary hardship” stands uncontested.
*425 There is no dispute that Jayne’s proposed use of the parcels for garden apartments is compatible with the existing use pattern in the area. Except for one owner-occupied residence and one residence, leased during the summer, Jayne’s property is located in a one-half mile strip of completely commercial uses. The construction of the garden apartments will not destroy the essential character of the area. Nor will there be any adverse effect on development of this neighborhood since the proposed use is not inconsistent with any reasonably foreseeable pattern of future uses in this already developed area. There is no danger of piecemeal destruction of the existing zoning scheme.
Although the village makes no argument concerning the second criterion of the Otto case, Special Term rested its decision on the view that Jayne had not made any showing of “ unique circumstances ” by which this property might be distinguished (Matter of Hickox v. Griffin, 298 N. Y. 365). It is evident that the difficulty here arose, not as a result of widespread conditions in the area, shared by many landowners, but because of the singular history of this case. (Cf. Matter of Otto v. Steinhilber, supra, pp. 77-78.) In any case, as a general rule, where the landowner has made the requisite showing of financial hardship and compatibility of his proposed use with the existing land use pattern, it would seem preferable to grant the variance. To deny the variance solely on the ground that “ unique circumstances ’ ’ had not been shown leaves open the prospect of a successful assault on the zoning ordinance as being confiscatory (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222).* Consequently, the net effect of the denial of the variance might be more detrimental to the community’s land use plan because the old less restrictive ordinance may authorize a far greater range of uses, many of which might be completely unacceptable. In contrast, a variance, wisely used, provides local zoning officials with an excellent means by which they can accommodate a conflict between the requirements of a generally sound zoning ordinance and the needs of a particular situation.
*426 The order of the Appellate Division should he affirmed, with costs.

 The present zoning classification contains a strong ingredient of discrimination and arbitrariness in light of the fact that the parcels are in the middle of an area being used for commercial purposes, and there is almost no probability that these nonconforming uses will soon disappear. (Udell v. Haas, 21 N Y 2d 463; Stevens v. Town of Huntington, 20 N Y 2d 352; Mary Chess, Inc. v. City of Glen Cove, 18 N Y 2d 205.)