Chief Judge Breitel
(dissenting). The orders appealed from in both proceedings should be reversed and the petitions dismissed. The permits issued for nursing home and domiciliary care facilities, and subsequently revoked by the New York City Department of Buildings, were illegal from their inception for lack of prerequisite certifications. Petitioners, therefore, could not have acquired any rights under them, by reliance or otherwise.
An administrative officer or board authorized to issue building permits has only so much power as delegated by the applicable ordinance (see 2 Rathkopf, Law of Zoning and Planning, p 56-1). Where the administrator issues a permit in the absence of jurisdiction or otherwise in contravention of law, his act is ultra vires and no rights vest from reliance on such a permit (pp 56-11 to 56-13; see, e.g., Marcus v Village of Mamaroneck, 283 NY 325, 330-331; Matter of Smalls v Board *419 of Stds. & Appeals of City of N. Y., 28 Misc 2d 147, 148, affd 14 AD2d 548, affd 11 NY2d 698; cf. Matter of Jayne Estates v Raynor, 22 NY2d 417, 422). Exemplary is the situation where an applicant fails to take the procedural steps necessary to confer jurisdiction on the administrator (see 2 Rathkopf, op. cit., p 56-3, n 3).
Pursuant to section 22-13 of the New York City Zoning Resolution, as amended March 8, 1973, uses permitted "as of right” in residential districts include "[N]ursing homes and health related facilities as defined in the New York State Hospital Code, and domiciliary care facilities for adults under the jurisdiction of the New York State Board of Social Welfare each of which have secured certification by the appropriate governmental agency”.
Nothing in this explicit language allows that a permit may be issued on the basis of a certificate merely anticipated or for which application has been made. The approval of the State agencies is a condition precedent to the lawful issuance of the permits. Issuance without such approval would not be a mere irregularity with respect to a power delegated to the administrator, but a complete failure of power to act, with permits void from their inception, and subject to revocation pursuant to section C26-118.7 of the Administrative Code of the City of New York.
In the instant , case, it is uncontroverted that at the time the permits were issued, the applicants had not yet obtained certification from the appropriate State agencies, namely, the State Department of Health and the State Board of Social Welfare. The permit for the Bayswater Health Related Facility was issued on November 7, 1973, but the approval of the State Department of Health was not obtained until November 29, 1973. By letter of that very date, the permit had been revoked, and shortly thereafter the Buildings Department was barred from reinstating the permit by a temporary restraining order in a related judicial proceeding, and also by the Board of Estimate’s so-called "stop-gap” resolution of December 6, 1973.
That the injunction would be vacated with the dismissal of the court proceeding the following February, and the stop-gap resolution eventually held unlawful by this court in Matter of Temkin v Karagheuzoff (34 NY2d 324), is irrelevant. What is crucial is that the permit was illegal and void when issued, and therefore required to be revoked because void. That the buildings commissioner was subsequently barred from recon *420 sidering the application by legal restraints, some of which were, retrospectively, invalid, is a misfortune that must be borne by the applicant who sought and relied on an illegal permit.
The same is of course true in Matter of Lee. The permit for enlargement and alteration was issued on November 20, 1973, despite the lack of approval by (or even application to) the State Board of Social Welfare, and was therefore properly revoked by letters dated December 11, 1973 and January 14, 1974. Indeed, since the board was not prepared to give its approval until January 23, 1974, after the valid Zoning Resolution of January 10, 1974, it is difficult to understand how petitioners could complain of the illegal stop-gap order tying the commissioner’s hands in reconsidering the application during December.
Matter of Temkin v Karagheuzoff (34 NY2d 324, supra) does not hold otherwise. The permit issued to the applicants in that case was valid and the city never contended otherwise; petitioners had obtained all the necessary approvals from the appropriate State and municipal authorities (id., p 327). Matter of Temkin holds only that the unlawful stop-gap resolution could not prevent the petitioners under a valid permit from vesting their rights in the building by completing construction of the foundation (id., pp 328-329).
The petitioners argue that their rights are vested in the permits because of the expenditures that they made in reliance on void permits. Persons may not contend that they were misled or deceived into acting in reliance upon unlawfully-issued permits since they are presumed to know the extent of the issuing officer’s authority (see, e.g., Marcus v Village of Mamaroneck, 283 NY 325, 330-331, supra; see, generally, 2 Rathkopf, op. cit., 56-12).
Nor may diaphanous, if not invisible, distinctions be made between preconditional approvals which look to the physical facilities rather than to the functional uses of physical facilities. In either event the municipal ordinance requires advance approval before a permit may be issued and construction started. The State regulations authorizing approvals, on the other hand, do not require that the building permits be first obtained (see Executive Law, § 758; 10 NYCRR Part 710; former 18 NYCRR Parts 20, 21, then in effect; cf. 18 NYCRR 15.3, now in effect).
Behind this rule is an important public policy, and that is to *421 prevent corruption. As was said long ago in Ostrowsky v City of Newark (102 NJ Eq 169, 172), and quoted by Rathkopf: "There can be no Vested rights’ under a void permit. To hold otherwise would be to put a premium on dishonest;* of city officials charged with the duty of issuing such permits and would open the way for connivance and fraud. The will of the official would then be substituted for the mandate or restriction of the legislative enactment and thus the limitations of zoning acts and ordinances held for naught.”
The language of the court in the Ostrowsky case was prescient when applied to the municipal regulation of building construction, and particularly timely when applied to nursing and domiciliary care facilities. These are no areas to lower the guards against corruption and devious manipulation.
Accordingly, the orders of the Appellate Division should be reversed and the petitions dismissed.
Judges Wachtler and Cooke concur with Judge Fuchs-berg; Judge Jones concurs in result in a separate opinion in which Judge Gabrielli concurs; Chief Judge Breitel dissents and votes to reverse in a separate opinion in which Judge Jasen concurs.
In Matter of Bayswater Health Related Facility v Karagheuzoff: Order affirmed, with costs.
In Matter of Lee v Walsh: On petitioners’ appeal: Appeal dismissed, without costs.
On respondents’ appeal: Order affirmed, with costs.