In the Matter of MILES A. GALIN, Appellant, v BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Respondents.

First Department, January 22, 1980

## APPEARANCES OF COUNSEL

*Leonard F. Rothkrug* for appellant.

*Ronald E. Sternberg* of counsel *(L. Kevin Sheridan* with him on the brief; *Allen G. Schwartz, Corporaton Counsel,* attorney), for respondents.

## OPINION OF THE COURT

FEIN, J.

██ We are all agreed that the Board of Estimate properly and lawfully accepted and exercised jurisdiction to review the determination of the Board of Standards and Appeals (BSA), which had granted a zoning variance to the petitioner, respecting premises 113 East 39th Street in Manhattan owned by petitioner, a medical doctor, and where he maintains a practice in ophthalmology with several other doctors. However, Justice YESAWICH, dissenting, concludes that the Board of Estimate erred when it found that the decision of the BSA was not supported by substantial evidence in the record. We disagree. Concededly the Board of Estimate has a narrow power of review, "limited to an administrative determination as to whether the decision of the board of standards and appeals under each of the specific requirements of the zoning resolution was supported by substantial evidence before the board of standards and appeals." (New York City Chapter, § 668, subd c; *Matter of Armil Realty Corp. v Board of Estimate of City of N. Y.,* 66 AD2d 888; *Matter of Cotroneo v Klein,* 62 AD2d 493.) In exercising this limited power, the Board of Estimate is not required to act as a rubber stamp and approve of the BSA's action because of the alleged expertise of the BSA. The Board of Estimate must make an independent judgment as to whether there was substantial evidence supporting the BSA determination.

██ On this record the Board of Estimate properly concluded that there was a lack of substantial evidence before the BSA to comply with the "specific requirements" of section 72-21 of the Zoning Resolution of the City of New York under which the application for a variance was made and processed.

Section 72-21 authorizes a use variance where the BSA finds there are "practical difficulties or unnecessary hardship", premised upon five specific findings which the BSA is required to make. The first requisite finding is that there is "a unique physical condition inherent in the particular lot * * * which causes a practical difficulty or unnecessary hardship" (Zoning Resolution, § 72-21, subd [a]). The BSA so found, premising its conclusion on the narrowness and depth of the subject lot, ignoring the undisputed evidence on the record that the two adjoining lots are identical in size and that such narrow lots are characteristic of the neighborhood. Indeed there was no evidence before the BSA that this lot was unique in its dimensions or in any other physical characteristic. In making its finding that there was a lack of substantial evidence to support this BSA finding, the Board of Estimate properly concluded: "There are no unique physical conditions peculiar to and inherent in the subject zoning lot compared to the lots in the neighborhood, resulting in practical difficulties or unnecessary hardship".

Although an affirmance is warranted on this basis alone, it is appropriate to examine the bases for the remaining requisite findings. The Board of Estimate was warranted in concluding: "The record fails to support a conclusion that the existing building cannot yield a reasonable return, nor that the alleged unique physical condition prevented a reasonable return on investment".

Relying on *Matter of Envoy Towers Co. v Klein* (51 AD2d 925) the BSA concluded that since this was an area variance it was only necessary to establish "practical difficulties" and not "special hardship", as with use variances. However, unlike *Envoy Towers (supra)* there was no evidence comparing the projected return with and without the variance. (See *Matter of Cowan v Kern,* 41 NY2d 591, 596, 597; *Matter of Envoy Towers Co. v Klein, supra.)* The premises are occupied by five doctors engaged in the group practice of ophthalmology, with a staff of 24 people. The variance was sought to expand the facilities. The proposed construction would practically eliminate the rear yard, required by the zoning resolution. Expansion in this direction is said to be required because petitioner was precluded by the rent control office from removing a tenant of the adjoining premises owned by petitioner. The BSA concluded that a reasonable return could not be obtained and that there were "practical difficulties" because of the

unavailability of such adjoining space and the financial consequences if all of the doctors removed from the premises. It thus found compliance with subdivision (b) of section 72-21 of the Zoning Resolution. However, it is plain that the basis for its decision was the denial of the certificate of eviction and speculation as to the removal of the doctors, hardly the substantial evidence of practical difficulty required.

The next two findings: (1) the proposed variance "will not alter the essential character of the neighborhood * * * and will not be detrimental to the public welfare" (Zoning Resolution, § 72-21, subd [c]); and (2) the practical difficulties do not constitute a self-created hardship (Zoning Resolution, § 72-21, subd [d]), may well have been supported by substantial evidence. However, it is noted that the Board of Estimate concluded that the variance would be detrimental to public welfare because it would result in an increase of patients, thus increasing pedestrian and vehicular traffic and the concomitant noise and air pollution. The BSA did not discuss this problem. Moreover, it is undisputed, as the Board of Estimate found, that "the proposed extension would occupy the entire rear yard, contrary to the open rear yards which are characteristic in the residential district." It may very well be that such a change in the character of the neighborhood would change the nature of the variance from an "area variance" to a "use variance", thus requiring a finding of special hardship (*Matter of Envoy Towers Co. v Klein, supra*), which the BSA itself conceded was not warranted here. We do not pass on this issue because we are agreed it is not reached.

The Board of Estimate properly concluded with respect to the fifth requisite finding (Zoning Resolution, § 72-21, subd [e]): "There is no evidence in the record to support the conclusion that the variance requested is the minimum variance necessary to afford relief." The BSA finding itself does not even purport to rely on any evidence that this was the minimum variance necessary. It merely recites the other findings as the basis for its conclusion. The architect who acted on behalf of petitioner stated that the medical practice was "bursting at the seams", and further, "It's not a question of financial hardship, it's a question—they don't have enough space. There is no financial hardship involved. We don't have the space." This is the essence of petitioner's case, personal inconvenience arising out of the growth and expansion of his practice. It

hardly provides substantial evidence supporting the BSA determination.

As Special Term concluded, the Board of Estimate properly and lawfully determined that the decision of the Board of Standards and Appeals was not supported by substantial evidence. The Board of Estimate provided appropriate written findings and an explanation of the basis for its decision (New York City Charter, § 668, subd c). Its determination was neither arbitrary nor capricious.

Petitioner's real objection is that the Board of Estimate does not have the expertise to review a determination of the Board of Standards and Apepals which is comprised of experts in the subject area. However, review by the Board of Estimate is mandated by statute.

In our view, had the Board of Estimate failed to set aside the determination of the Board of Standards and Appeals, it would have been the court's duty to do so on appropriate application (see *Matter of Cotroneo v Klein*, 62 AD2d 493, *supra).* There has been a complete failure to demonstrate a practical difficulty in the use and development of petitioner's property requiring an area variance. Petitioner has failed to "show that as a practical matter he cannot utilize his property or a structure located thereon 'without coming into conflict with certain of the restrictions of the [zoning] ordinance'." *(Matter of Fuhst v Foley,* 45 NY2d 441, 45.)

The judgment, Supreme Court, New York County (WILLIAMS, J.), entered January 23, 1979, dismissing the petition and sustaining the determination of the Board of Estimate should be affirmed, together with costs.

YESAWICH, JR., J. (dissenting). In my view the Board of Estimate erred when it disapproved the BSA decision and Special Term by its order merely compounded that error. The Board of Estimate's reviewing authority is restricted and unless it can be said the BSA's action was totally unjustified, the Board of Estimate was without authority to alter it. The record discloses the City Planning Commission did not object to the proposed variance and that in reaching its unanimous decision the BSA, aware of the criteria to be met on an area variance application, conducted hearings, had a committee inspect what it concluded was, because of its narrowness, a unique physical site, gathered the relevant financial data, considered the views of surrounding landowners, none of

whom voiced objection, and then issued fairly extensive and detailed findings.

On the issue of uniqueness the BSA observed the subject lot was "extremely narrow" having only 16 feet 8 inches of frontage, whereas the Zoning Resolution was predicated on lot sizes having 40 feet frontage. Whether a lot is unique or not is a matter of interpretation and judgment. The BSA, a body of experts charged with implementing the Zoning Resolution, determined the subject lot was "uniquely undersized" and that finding has an obvious basis in the record. The fact that adjoining lots may be the same size does not detract from this conclusion for the lot's uniqueness emanates not from a comparison with adjoining lots but from a comparison with the Zoning Resolution's lot size requirements.

Since an area variance was sought, only practical difficulties were required to be shown (cf. *Matter of Envoy Towers Co. v Klein,* 51 AD2d 925), and were. The BSA found petitioner was unable to make use of space in an adjacent building he owned because he had been prevented by the rent control office from evicting the tenant, and also noted that if the offices were relocated the owner could not amortize his investment or either obtain the necessary rents to keep the building viable or its market value. Furthermore, the BSA was furnished information by an independent certified public accounting firm which documented the financial loss which would accrue to petitioner if the subject lot was developed without the requested variance.

There was ample evidence in the record to also support finding that the essential character of the neighborhood would not be altered by the variance. Engaging in medical practice was a permitted activity and extension into the rear yard was a permitted obstruction under section 24-33 of the Zoning Resolution so long as the building height did not exceed one story nor in any event 23 feet above curb level. Here the completed structure would have resulted in two stories total-ing only 17 feet in height.

BIRNS, J. P., BLOOM and LUPIANO, JJ., concur with FEIN, J.; YESAWICH, J., dissents in opinoin.

Judgment, Supreme Court, New York County, entered on January 23, 1979, affirmed. Respondents shall recover of appellant $75 costs and disbursements of this appeal.