Meyer, J.
(dissenting). Because the decisions of both the Board of Estimate and of the Appellate Division are based upon a factual assumption for which there is no support in the record and because the Appellate Division decision applied an improper standard with respect to the Board of Estimate’s power of review of the determination of the Board of Standards and Appeals (BSA) granting the variance requested, I respectfully dissent.
That the Board of Estimate misapprehended the nature of the application made to the BSA is apparent from its finding that “the proposed extension would occupy the entire rear yard, contrary to the open rear yards which are characteristic in the residential district.” That the Appellate Division likewise misread the record is evident from its characterization of that finding of the Board of Estimate, which it quoted, as “undisputed” (72 AD2d 114, 117). The fact is, as the BSA found, as the testimony of petitioner’s architect established and as the section plan of the first floor and basement, and the floor plans of the existing basement and of the first floor as existing and as proposed, graphically demonstrate, that the existing basement now extends into and covers the rear yard, that 100% coverage of the rear yard is permitted by section 24-33 of the Zoning Resolution and that the only reason that the building department denied the permit and required petitioner to apply for a variance is that section 24-33 limits such a rear yard extension to not more than 23 feet above curb level but not more than one story in height. Because the proposed extension of the first floor into the rear yard, though permissible as to area covered and only 17 feet in total height, would together with the existing basement extension be one and one-half stories above ground, the building department concluded that it could not issue a permit unless the BSA granted a variance.
The use (medical offices) is permitted in the district, neither yard coverage nor height restrictions are violated *872 by the proposed first floor extension, and petitioner has the absolute right to a two-story extension into the rear yard if he takes the economically ridiculous step of tearing down the present basement extension (half of which is below ground) and replacing it with an extension composed of one cellar floor (completely below ground) and one above ground floor (which, however, would be an architectural and perhaps a safety aberration, since the floors of the main building and the extension would not be on the same level). Thus, the only feature of the proposed extension to which the owners of neighboring properties could object, or on which the BSA should as a practical matter have to pass, is the effect of there being one and a half rather than just one story above ground. There being nothing in the record to suggest that the difference has any pragmatic consequence, allowance of the requested variance should have been a foregone conclusion and, indeed, the BSA granted it unanimously.
Affirming the Board of Estimate’s contrary determination, the Appellate Division has characterized petitioner’s real objection as “that the Board of Estimate does not have the expertise to review a determination of the Board of Standards and Appeals” and refuted that objection by noting that “review by the Board of Estimate is mandated by statute” and has held that the determination of the BSA was correctly set aside because “There has been a complete failure to demonstrate a practical difficulty in the use and development of petitioner’s property requiring an area variance” (emphasis supplied, at p 118). In doing so it has clearly demonstrated its misunderstanding of the functions of both the BSA and the Board of Estimate.
Under section 666 of the New York City Charter the Board of Standards and Appeals is given jurisdiction “To determine and vary the application of the building zone resolution as may be provided in such resolution and pursuant to section six hundred sixty-eight” (subd 6) and “In passing upon appeals, to vary or modify any rule or regulation or the provisions of any law relating to the construction, use, structural changes, equipment, alteration *873 or removal of buildings or structures, or vaults in sidewalks appurtenant thereto, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the law, so that the spirit of the law shall be observed, public safety secured and substantial justice done” (subd 8). Subdivision c of section 668 of the charter authorizes review of a BSA determination by the Board of Estimate, but expressly provides that: “In the case of an application to determine and vary the zoning resolution, review by the board of estimate shall be limited to an administrative determination as to whether the decision of the board of standards and appeals under each of the specific requirements of the zoning resolution was supported by substantial evidence before the board of standards and appeals.” Thus, the Board of Estimate is limited, as are the courts in reviewing variance determinations generally, to considering whether there was substantial evidence for the BSA’s determination. Discretion to grant or deny a variance application is the province of the BSA, not the Board of Estimate. The latter body acts in reviewing a BSA determination as does a court, and therefore may not substitute its judgment for that of the BSA (Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 316). The determination of the BSA should be sustained where there is substantial evidence to support it, the responsibility of the Board of Estimate being not to make the zoning decision but simply to review the evidence to determine whether there is support for the decision made by the BSA (cf. Matter of Fuhst v Foley, 45 NY2d 441, 444; Matter of Cowan v Kern, 41 NY2d 591, 599).
The issues before the Appellate Division, therefore, involved not the expertise of the Board of Estimate but the authority of that board in relation to the BSA, and not whether the evidence required the BSA to grant the variance but whether it was substantial enough to support its exercise of the discretion vested in it (and it alone) to grant the variance. If it was, the Board of Estimate exceeded its authority in setting the BSA grant aside and the Board of Estimate’s determination should have been reversed.
*874 The criteria for granting a variance are set forth in section 72-21 of the New York City Zoning Resolution, as subdivision 6 of section 666 of the charter allows.[1] Those criteria relate to the unique physical conditions peculiar to and inherent in the zoning lot, reasonableness of return, aifect on the character of the neighborhood, whether the difficulty has been created by the owner, and whether the variance, if granted, is the minimum variance necessary to afford relief.[2]
*875 With respect to uniqueness the BSA found that the lot was but 16 feet 8 inches in frontage by 100 feet in depth whereas the lot size required in the district was 40 feet frontage and 3,800 square feet in area, that petitioner’s lot was therefore uniquely undersized, permitting enlargement only by expanding into the rear yard, that section 22-14 of the Zoning Resolution permitted use for a community facility, including medical offices or group medical centers, and that section 24-33 of the resolution permitted building in the rear yard for a community facility use provided the height of the building did not exceed, one story nor in any event 23 feet above curb level. It noted that the proposed first-floor extension would be but 17 feet above curb level in height and found that conditions peculiar to this zoning lot resulted in practical difficulty.
The Board of Estimate concluded that the BSA finding of uniqueness was not supported by substantial evidence because “There are no unique physical conditions peculiar to and inherent in the subject zoning lot compared to the lots in the neighborhood,” hardly a sufficient basis for its conclusion since it mouths the wording of the resolution without considering the evidence. The Appellate Division decision (at p 116) states only that “there was no evidence before the BSA that this lot was unique in its dimensions or in any other physical characteristic.” In so concluding, it, as did the board, ignored the tax map and plot plan in the record which show large lots interspersed with narrow lots, ignored the nature of the variance requested (permission to project one and a half stories rather than one story above curb level of an otherwise conforming extension into the rear yard) and the relationship of that variance to physical conditions peculiar to the lot (the presence on the lot of an existing rear yard extension at basement rather than cellar level and the absence, because of the narrowness and small area of the lot as compared to the size and area of lot for which the district is zoned, of any other place on *876 the lot in which the otherwise permissible structure could be erected) and read into “uniqueness” a meaning broader than usually accorded that term in zoning cases. As we have but recently had occasion to state in Matter of Douglaston Civic Assn. v Klein (51 NY2d 963, 965): “Uniqueness does not require that only the parcel of land in question and none other be affected by the condition which creates the hardship (Beatrice Block Club Assn. v Facen, 40 Mich App 372, 380-382; see Matter of Jayne Estates v Raynor, 22 NY2d 417, 425; 2 Anderson, New York Zoning Law and Practice 33, § 18.24; 3 Rathkopf, Law of Zoning and Planning, p 38-15, § 38.02). What is required is that the hardship condition be not so generally applicable throughout the district as to require the conclusion that if all parcels similarly situated are granted variances the zoning of the district would be materially changed. What is involved, therefore, is a comparison between the entire district and the similarly situated land.” As in that case so in this, though there are other plots in the district as narrow as petitioner’s, it cannot be said as a matter of law that the BSA’s finding of uniqueness was arbitrary or capricious or was not supported by substantial evidence.
Concerning reasonableness of return, the BSA, relying on Matter of Envoy Towers Co. v Klein (51 AD2d 925) and the fact that what was requested was an area variance, held proof of no reasonable return not required, but nevertheless found that there was proof of financial hardship in that if the existing offices were vacated the owner could not amortize his investment or obtain either the rent on lease or the market value on sale to keep the building viable. It noted also that the owner had attempted to solve the problem by evicting a residential tenant from the building next door which he also owns. The Board of Estimate contented itself with the conclusory statement that the record failed to support the conclusion that the existing building would not yield a reasonable return. The Appellate Division (at p 117) distinguished Envoy Towers on the ground that unlike that case, in the present case no evidence comparing projected return with and without the variance had been *877 submitted,[3] and concluded that it was plain that the basis for the BSA decision “was the denial of the certificate of eviction and speculation as to the removal of the doctors” which it characterized as “hardly the substantial evidence of practical difficulty required.” In doing so the Appellate Division overemphasized denial of the next door certificate of eviction which had been mentioned by the BSA only in an aside (apparently to make clear that the difficulty was not self-created, the owner having tried to alleviate his space problem in another way before seeking the variance) and ignored the testimony of the architect before the Board of Estimate that the space used by the doctors “is costing $26.00 a square foot when the going rate is $9.00 a square foot for comparable space,” clearly sufficient evidence to support the BSA’s finding that if the medical group was forced out of the building by its need for space the building could not be leased or sold on a basis consistent with economic viability (cf. Matter of Jayne Estates v Raynor, 22 NY2d 417, 424, supra).
The Appellate Division in discussing the minimum variance criteria, also quoted as the basis for its conclusion that the crux of petitioner’s case was “personal inconvenience arising out of the growth and expansion of his practice,” the architect’s testimony that “ ‘It’s not a question of financial hardship’ ” (72 AD2d, at p 117). That statement was made by the architect at the BSA hearing of May 24,1977. There was, however, presented to the BSA at its hearing of September 27, 1977 (and to the Board of Estimate at its May 25, 1978 hearing) evidence establishing the economic viability problem above noted not only from the architect but in the form of an accountant’s report and a Helmsley-Spear *878 report. With that evidence before the BSA, its conclusion on this point cannot be said to be irrational, and as Matter of Pell v Board of Educ. (34 NY2d 222, 231) teaches, “Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard.”
The Appellate Division (at p 117), stating that the BSA findings concerning character of the neighborhood and self-created difficulty “may well have been supported by substantial evidence”, nevertheless noted that the Board of Estimate found detriment in the increased number of patients and resulting increased traffic, noise and air pollution, on which the BSA had not commented, and that the extension would occupy the entire yard contrary to the open yards characteristic in the district. Neither has any bearing whatsoever since a medical officer nor a group medical center, without regard to the number of patients attending at such an office or center, is a permitted use in the district, and when such a use is made of a property within the district, occupation of the entire rear yard is, as was noted earlier in this opinion, expressly permitted by the Zoning Resolution. Moreover, the BSA findings, which both the Board of Estimate and the Appellate Division ignored, expressly stated that the use was one permitted in the district, that no violation of the spirit of the ordinance would occur since the proposed extension was permitted as concerns height, bulk, and density of population, and that no adjacent property would be adversely affected, the property the proposed extension backs up on being, in fact, in a commercially zoned district. Other than as above noted neither the Board of Estimate nor the Appellate Division discussed whether the difficulty was self-created, perhaps, so far as the Board of Estimate is concerned, because the BSA’s counsel testifying before the Board of Estimate pointed out that under subdivision d of section 72-21 if the other four conditions are met, acquisition with knowledge of the Zoning Resolution provisions does not constitute a self-created hardship.
Finally, in relation to the variance granted being the minimum variance necessary, the BSA pointed out that the extension conformed in height and total floor area to the requirements of the Zoning Resolution and concluded that *879 the variance requested was the minimum necessary to afford relief. The Board of Estimate stated, without explication, that there was no evidence in the record to support the BSA conclusion, and the Appellate Division, characterizing the matter as one of “personal inconvenience”, concurred. The conclusions thus reached were evidently predicated on the mistaken impression of both bodies that the variance requested was of the rear yard requirement. As pointed out in the beginning of this opinion, the only variance needed, and the only variance asked for, was that the permitted extension covering the entire rear yard and to be used for the permitted purpose of medical offices be allowed to have one and one-half stories above ground rather than the one story permitted by the resolution.
No more minimum variance is conceivable. No variance having less effect, adverse or otherwise, upon adjacent owners or others living in the neighborhood can be imagined. To put petitioner to the expense of tearing down the existing basement extension into the rear yard and erecting a permitted two-story cellar and first-floor extension covering the entire rear yard would be wholly irrational. To require that he limit his practice to what the present space will accommodate, though other permitted medical offices are not so limited, or to relocate the practice to another building (possibly in the same district and of the same area and frontage) where a two-story extension fully covering the rear yard can be built without a variance would be equally ridiculous.
The Appellate Division’s order sustaining the Board of Estimate’s disapproval can only have resulted from its misunderstanding of the variance requested or the role to be played by the Board of Estimate under subdivision c of section 668 of the New York City Charter, or both. The order of the Appellate Division should be reversed, the determination of the Board of Estimate should be annulled and the determination of the Board of Standards and Appeals granting the requested variance should be reinstated.
Order affirmed, etc.

. Absent the statutory authorization contained in subdivision 6 of section 666 of the charter, the governing criteria would be the wording of subdivision 8 of that section, quoted above, for, absent a statute otherwise providing, a municipal resolution or ordinance may not abridge the variance power granted by a zoning statute (Matter of Fina Homes v Beckel, 24 Misc 2d 823, 825; cf. Matter of De Sena v Board of Zoning Appeals of Inc. Vil. of Hempstead, 45 NY2d 105, 109; see Matter of Village of Bronxville v Francis, 1 AD2d 236, 238, affd 1 NY2d 839; Matter of Lagin Assoc. v Schoepflin, 50 Misc 2d 497; 1976 Opns Atty Gen 180; 67 NY Jur, Zoning & Planning Laws, § 7, p 579). Under the wording of subdivision 8 an area variance will be granted on a showing of practical difficulty alone, that term, however, being not as yet fully defined by this court (Matter of Fuhst v Foley, 45 NY2d 441, 445; cf. Matter of Wachsberger v Michalis, 19 Misc 2d 909, affd 18 AD2d 921). Because I conclude, as did Mr. Justice Yesawich at the Appellate Division, that there was substantial evidence to support the BSA’s determination under section 72-21 of the Zoning Resolution, it is not necessary in this opinion to discuss subdivision 8, or the cases construing the essentially identical language of subdivision 4 of section 81 of the General City Law, subdivision 6 of section 267 of the Town Law and subdivision 2 of section 7-712 of the Village Law.

. The findings required by the section are: “(a) That there are unique physicial conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to and inherent in the particular zoning lot; and that, as a result of such unique physical conditions, practical difficulties or unnecessary hardship arise in complying strictly with the use or bulk provisions of the resolution; and that the alleged practical difficulties or unnecessary hardship are not due to circumstances created generally by the strict application of such provisions in the neighborhood or district in which the zoning lot is located, (b) That because of such physical conditions, there is no reasonable possibility that the development of the zoning lot in strict conformity with the provisions of this resolution will bring a reasonable return, and that the grant of a variance is therefore necessary to enable the owner to realize a reasonable return from such zoning lot. * * * (c) That the variance, if granted, will not alter the essential character of the neighborhood or district in which the zoning lot is located; will not substantially impair the appropriate use or development of adjacent property; and will not be detrimental to the public welfare, (d) That the practical difficulties or unnecessary hardship claimed as a ground for a variance have not been created by the owner or by a predecessor in title. Where all other required *875 findings are made, the purchase of a zoning lot subject to the restrictions sought to be varied shall not itself constitute a self-created hardship, (e) That within the intent and purposes of this resolution the variance if granted, is the minimum variance necessary to afford relief; and to this end, the Board may permit a lesser variance than that applied for.”

. While there was such proof in Envoy Towers, its holding, as the cases it cites show, was that economic hardship need not be proved in an area variance case. The Appellate Division’s decision in the instant case, therefore, departs from the holding it articulated in Envoy Towers with respect to the same section 72-21. As is thus evident, the failure of that section to distinguish between area and use variances thus muddies the basis for granting area variances. For the reason indicated in footnote 1 above, I assume for purposes of discussion that the criteria established by the section apply in area as well as use cases, but conclude that the BSA could properly find on the record before it that in this case the criteria were met.