MORRIS S. GREENBAUM et al., Respondents, v BOARD OF ESTI-
MATE OF THE CITY OF NEW YORK et al., Appellants.

First Department, July 6, 1989

**APPEARANCES OF COUNSEL**

*Linda H. Young* of counsel *(Edward F. X. Hart* with her on

the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellants.

*Frank Leavitt* of counsel *(Leon A. Katz,* attorney), for respondents.

## OPINION OF THE COURT

CARRO, J. P.

In 1983, petitioners applied for a zoning variance of a residentially zoned parcel of property, located near JFK International Airport, to permit the construction of a warehouse to be used by airline companies. The subject property, which was irregular in shape, was zoned for residential use, as was most of the property abutting three sides of it. However, the property to the east of the subject property was zoned for manufacturing use, and upon it were warehouses, a gasoline service station and a tire store; in addition, the Long Island Railroad runs above ground to the east of the subject property, at a distance of 200 or more feet. Baisley Boulevard, the southern boundary of the subject property, is a main thoroughfare.

The instant application for a variance is only one of several made by petitioners. In 1969, petitioners were denied a variance allowing the construction of a one-story magazine warehouse with accessory offices, loading and parking. At that time, the Board of Standards and Appeals (BSA) denied the application because it was unable to make certain requisite findings, pursuant to New York City Zoning Resolution § 72-21 that (a) there were unique physical conditions peculiar to the zoning lot; (b) such physical conditions would prevent the owner from realizing a reasonable return; and (c) that the proposed variance would not alter the essential character of the neighborhood. In 1970, the BSA again denied an application by petitioners, for substantially similar reasons.

In 1982, petitioners filed a new building application in order to build a warehouse, although there was no variance. This application was subsequently denied because the property was not zoned for commercial use. Petitioners filed the instant application for a variance, allowing for a commercial warehouse with a loading dock, parking facilities, and six semidetached houses, approximately one month later. Shortly thereafter the Community Board recommended that the application be disapproved because the surrounding area was residential in nature. Petitioners subsequently amended the application so as to exclude that portion of the request regarding the

residential dwellings, and for the variance to apply only to a portion of the subject property.

The BSA conducted public hearings regarding the proposed variance. Residents of the area submitted formal objections and testified in opposition to it. Among the reasons they cited, in addition to the desire to maintain the residential nature of the area, were concerns regarding increased heavy traffic near a local school, the anticipated increase in noise level and congestion that would result from a commercial warehouse. Also cited was the potential loss of value of homes in the area.

When petitioners' architect was asked if the variance requested constituted the minimum necessary to afford relief of any hardship, he asserted that airline companies were interested in the subject property because of its proximity to JFK International Airport, and that the warehouse had to be of a "sufficient size", to accommodate the companies. He did not indicate that any other possible use requiring a lesser or no variance had been recently explored.

Evidence submitted as to attempts to find uses other than as a commercial warehouse was sparse; furthermore it was stale, dating back to 1967 and 1968, when the site was declared unsuitable for a hospital and a yeshiva, respectively. Petitioners also submitted a conforming use analysis for 28 one-family homes, but asserted that this was economically unfeasible, although there was evidence indicating that such a project would yield a profit in excess of 10%.

The BSA adopted a resolution granting petitioners a variance permitting the construction of a warehouse. Despite prior decisions to the contrary, the BSA determined that the evidence was sufficient to sustain all findings required by New York City Zoning Resolution § 72-21. Community Board 12 appealed to the Board of Estimate (BOE), which accepted jurisdiction.

Following a public hearing, where grave concern was expressed by a County Assemblywoman and District Councilman, as well as by residents, the BOE, by a vote of 8 to 3, adopted a resolution disapproving the decision of the BSA. The BOE concluded that petitioners failed to establish unique physical conditions which inherently give rise to any need for a use variance. The BOE further determined that the record before the BSA did not reflect that there was substantial evidence to establish that there was no reasonable possibility that a conforming use of the lot would not bring a "reasonable

return to the owner". In addition, the BOE found the record did not contain substantial evidence that the proposed variance would not alter the "essential nature of the neighborhood or district" or "substantially impair the appropriate use or development of the adjacent property". Finally, the BOE noted that the record failed to support the BSA's finding that the variance was the minimum necessary to afford relief for any alleged hardship.

In a proceeding brought pursuant to CPLR article 78, petitioners sought to have the determination of the BOE annulled. The IAS court granted the petition and summarily held that there was substantial evidence to support the BSA's determination; the court further concluded that the BOE exceeded its authority and power to review when it overturned the BSA grant.

The instant appeal followed.

It is undisputed that the BOE has a limited and narrowly defined scope of authority. As the Court of Appeals has stated: "The Board of Estimate's review powers are limited to whether there is substantial evidence to support the Board of Standards and Appeals determination (NY City Charter § 668 [c])." *(Matter of 97 Columbia Hgts. Hous. Corp. v Board of Estimate,* 67 NY2d 725, 727; *Matter of Galin v Board of Estimate,* 72 AD2d 114, 115, *affd* 52 NY2d 869.)* In this regard, the New York City Charter § 668 (c), provides: "In the case of an application to determine and vary the zoning resolution, review by the board of estimate shall be limited to an administrative determination as to whether the decision of the board of standards and appeals under *each* of the specific requirements of the zoning resolution was supported by substantial evidence before the board of standards and appeals. The board of estimate may approve or disapprove such decision and shall provide written findings and an explanation of the basis for its decision under the zoning resolution" (emphasis added).

Thus, the question at hand is whether the instant application for a use variance was supported by substantial evidence meeting each of the requirements of the Zoning Resolution. The five factors, each and every one of which must be met before a use variance may validly be granted, as enumerated in New York City Zoning Resolution § 72-21 are (a) unique physical characteristics which would create unnecessary hardship in complying with the Zoning Resolution; (b) *no* reasonable possibility that the development of the zoning lot in strict

conformity with the Zoning Resolution would not enable the owner to realize a reasonable return; (c) that the variance *will not alter the essential character* of the neighborhood or district or be detrimental to public welfare; (d) that the owner has not created the practical difficulties or unnecessary hardships claimed in support of the variance; and (e) that the variance is the *minimum* variance necessary to afford relief.

In our view, the BOE correctly concluded that petitioners did not establish each of the five factors by substantial evidence. Indeed, petitioners failed to sufficiently support 4 of the 5 requirements. *(See, Matter of Galin v Board of Estimate, supra,* 72 AD2d, at 116.)

First, we agree with the BOE that there is nothing about the irregular size of the subject property which causes it to be inherently unsuitable for residential use. *(Matter of Marchese v Koch,* 120 AD2d 590, 591; *Matter of Shiner v Board of Estimate,* 95 AD2d 831, 832.)* Second, we are not persuaded that there was substantial evidence to show that petitioners demonstrated that they could not realize a reasonable return by conforming use; among other permissible uses for the subject property as it is now zoned are libraries, schools, community centers, medical offices and nursing homes, as well as residential units. The 20-year-old proposals and subsequent feasibility study do not convince us that the property could not yield a reasonable return without a variance.

Third, it is clear that the proposed variance places the essential character of the neighborhood at great risk. Given that the overwhelming use of the surrounding property is residential, and includes a school, an airline warehouse would indeed substantially impair use of the surrounding area by residents. *(Matter of Shiner v Board of Estimate, supra,* 95 AD2d, at 832.)* This conclusion is not undermined by the fact that there is traffic on Baisley Boulevard to the south or by the few commercial establishments to the east. Moreover, the Court of Appeals has cautioned against piecemeal variances, such as the one herein considered, which ultimately alter the nature of the neighborhood and may cause " 'far greater hardships than that which a variance may alleviate' ". *(Matter of Village Bd. v Jarrold,* 53 NY2d 254, 259-260, quoting *Matter of Otto v Steinhilber,* 282 NY 71, 78.)* Indeed, we believe that construction of an airline warehouse would eviscerate the essential residential character of the neighborhood.

Finally, we are in agreement with the BOE that it was not

shown by sufficient evidence that the variance requested was the minimum variance necessary to relieve the alleged hardship. While the BSA based its findings in this regard in large part on the anticipated financial return of the proposed use, a mere showing that commercial use is more profitable than residential use does not justify a variance. *(Matter of Marchese v Koch, supra,* 120 AD2d, at 591.)

Thus, it is clear that the BOE properly determined that the decision of the BSA was unsupported by substantial evidence and acted within its authority when it disapproved the decision of the BSA which granted the variance.

According, the judgment of the Supreme Court, New York County (Kenneth Shorter, J.), dated June 29, 1988, which granted petitioners' motion for summary judgment pursuant to CPLR article 78 reviewing, vacating and annulling a determination by respondent, Board of Estimate of the City of New York, dated November 19, 1987 (which determination disapproved the decision of the Board of Standards and Appeals dated June 30, 1987), and granting petitioners' application to vary the Zoning Resolution with respect to premises located at 167-11 Baisley Boulevard, should be reversed, on the law and on the facts, the article 78 petition denied and dismissed, and the determination of the Board of Estimate reinstated, without costs.

MILONAS, KASSAL, ROSENBERGER and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on July 14, 1988, unanimously reversed, on the law and on the facts, without costs and without disbursements, the article 78 petition denied and dismissed, and the determination of the Board of Estimate reinstated.