■ In the Matter of EDWARD J. VOMERO, Respondent, v CITY OF NEW YORK et al., Appellants. [864 NYS2d 159]—

In a proceeding pursuant to CPLR article 78 to review a determination of the Board of Standards and Appeals of City of New York dated August 9, 2005, which, after a hearing, granted the application of G.A.C. Catering, Inc., for a use variance, City of New York, Board of Standards and Appeals of City of New York, and Department of Buildings of City of New York appeal, and G.A.C. Catering, Inc., separately appeals, from a judgment of the Supreme Court, Richmond County (Aliotta, J.), dated August 7, 2006, which granted the petition and annulled the determination.

Ordered that the judgment is reversed, on the law, with one

bill of costs to the appellants appearing separately and filing separate briefs, the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits.

Pursuant to New York City Zoning Resolution § 72-21, in order to issue the requested use variance, the Board of Standards and Appeals of City of New York (hereinafter the BSA) was required to find that the proposed development by G.A.C. Catering, Inc. (hereinafter GAC), met the following five specific requirements: (a) that because of "unique physical conditions" of the property, conforming uses would impose "practical difficulties or unnecessary hardship;" (b) that also due to "unique physical conditions," conforming uses would not "enable the owner to realize a reasonable return" from the zoned property; (c) the proposed variances would "not alter the essential character of the neighborhood or district;" (d) the owner did not create the practical difficulties or unnecessary hardship; and (e) only the "minimum variance necessary to afford relief" is sought. Local zoning boards have broad discretion, and judicial review is thus limited to determining whether a zoning board's determination was illegal, arbitrary and capricious, or an abuse of discretion (see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; Matter of B.Z.V. Enter. Corp. v Srinivasan, 35 AD3d 732 [2006]). Here, the BSA's determination granting GAC's application for a use variance had a rational basis in the record and was not illegal, arbitrary and capricious, or an abuse of discretion (see Matter of Ifrah v Utschig, 98 NY2d 304, 308-309 [2002]; Matter of DeCaro Capital Inv. Group, LLC v Voekler, 32 AD3d 852 [2006]; Matter of Halperin v City of New Rochelle, 24 AD3d 768, 771 [2005]).

We note that, as to the first factor, the BSA found that some other properties in the area, which have similar characteristics and are in locations similar to the property at issue here, had "unique physical conditions" such that "practical difficulties or unnecessary hardship" would arise with conforming use. There is nothing in the record to support the conclusion that there is any substantial difference between the property at issue here and those other properties (see Matter of Campo Grandchildren Trust v Colson, 39 AD3d 746 [2007]).

Further, the BSA found that the property would not produce a financially feasible return if developed for any of the "as of right" uses. In light of the evidence submitted by GAC, this finding was not arbitrary and capricious, despite the presence of countervailing evidence, which was not conclusive.

Finally, we note that, contrary to the Supreme Court's determination, the fact that the lot in question was purchased with

the knowledge that it was subject to the restrictions sought to be varied, did not, by itself, constitute a self-created hardship (*see* NY City Zoning Resolution § 72-21 [d]). Fisher, J.P., Florio and Chambers, JJ., concur.

Lifson, J., dissents and votes to affirm the judgment with the following memorandum, in which Angiolillo, J., concurs.

Lifson and Angiolillo, JJ. (dissenting). G.A.C. Catering, Inc. (hereinafter GAC), purchased a lot zoned for residential use, on the corner of Hylan Boulevard and Otis Avenue in Richmond County, for the sum of $275,500 in September 2003. GAC demolished the home on the property and applied for a use variance to construct a two-story photography studio in its place. That application was denied. GAC applied to the respondent Board of Standards and Appeals of City of New York (hereinafter the BSA). After a hearing, the BSA granted the application for the variance. The petitioner, an owner of a neighboring home, commenced the within CPLR article 78 proceeding, seeking to annul the determination of the BSA. The Supreme Court granted the petition on the ground that the BSA's determination lacked a "substantial basis" in the record, and this appeal ensued.

This appeal, of necessity, must examine whether or not there was sufficient evidence before the BSA to grant the relief requested by GAC. The facts before the BSA showed that the lot in question was approximately 5,690 square feet, located in a residential zone, improved by a residential home before such home was demolished, and encumbered with a five-foot widening line on its Otis Avenue side. Properties on the other side of Hylan Boulevard are commercial in nature.

In support of its application, GAC argued that the unique physical condition of the site including, inter alia, the irregular shape of the lot and the five-foot widening line encumbrance, would create practical difficulties or unnecessary hardship and prevent any economically feasible redevelopment of the property for residential use.

At the hearing, the following proof was submitted in support of GAC's application: (1) a land use diagram, demonstrating, among other things, that of 56 corner lots, the subject property is one of three that remain residential lots; (2) an economic feasibility study dated December 28, 2004, prepared by Equity Valuation Associates, comparing the proposed use with other potential "as of right" uses, including development of a medical office, or some derivative of a multiple dwelling; (3) a map showing that the lot in question, bordered by Hylan Boulevard, Otis Avenue, and Bryant Avenue, is wholly residential in character,

and (4) a letter from a realtor endeavoring to demonstrate that the traffic and noise along Hylan Boulevard impaired interest by prospective residential users of the property. In accordance with this proof, GAC submitted that it could only expect about a 1% return on its investment even if used as a two- or three-unit residence. Despite that analysis, the only appraisal submitted in the record indicated the value of the parcel as vacant land within the existing zoning regime as $375,000 in April of 2004, a significant return on the investment.

The BSA also heard testimony as to GAC's proposed use of the subject premises. GAC owns a catering hall across the street on Otis Avenue and is desirous of building a facility on the subject premises to photograph individuals using the catering hall. During the hearing, it was represented on behalf of GAC that while there would be insufficient parking for multiple residential uses, there would be sufficient parking for GAC's intended commercial use because it was contemplated that people using the catering hall (i.e., wedding/bar mitzvah parties and such) would not drive to the photography facility on the subject premises, but would merely walk across Otis Avenue.

In order to grant the variance the applicable zoning code provision requires the BSA to make certain mandated findings—all of which must be present before a variance can be granted. Use variances are governed by New York City Zoning Resolution § 72-21. To obtain a use variance predicated upon an alleged practical difficulty or unnecessary hardship, the applicant must show, and the BSA must find, that: (a) the lot in question is unique and the difficulty attends to that circumstance and not to the strict application of the zoning regulation at issue; (b) because of the alleged physical condition of the property, there is no reasonable possibility that development of the property within the existing zoning regulation will yield a reasonable return of investment; (c) the variance will not alter the character of the neighborhood, impair the use or development of adjacent property, and will not be detrimental to the public welfare; (d) the necessity of the variance is not self-created, except the mere purchase of the lot within the zone in question shall not itself be deemed a self-created hardship; and (e) the variance in question is the minimum variance necessary to afford relief.

In reviewing the record before the BSA, the Supreme Court made several cogent findings, which in my opinion are unassailable, in concluding that GAC did not show (and the BSA could not properly find) that all of these requisites were met. In pertinent part, the Supreme Court concluded, contrary to the

findings of the BSA, that GAC's hardship was self-created. As the majority notes (and I do not dispute), under the controlling code provisions, the fact that the hardship in question may be self-created, in and of itself, might not be dispositive. However, in this case, the BSA's finding that the hardship was not self-created, which was not even necessary to grant the application, is so contraindicated by the record that such finding is illustrative of the arbitrary nature of the BSA's actions.

As the Supreme Court noted, purchasers are presumed to know the zoning regulations in question. Here, the property lies in an area zoned residential. In situations such as in the instant case, contracts routinely are made conditional on a variance to be granted in futuro. No explanation was provided as to why that was not done here. In the instant case, the hardship did not arise from the mere fortuitous location of the lot within the residential zone or even the purchase of property in ignorance of the applicable zoning regulations. On the contrary, the record shows that GAC purchased the lot and demolished the improvements thereon without any attempt to utilize the property in conformance with the code or to obtain a variance prior to unilaterally changing the character of the property and the improvements thereon.

More significantly, the Supreme Court also determined that the BSA's finding that the lot in question was unique was also contrary to the record before it. The subject lot is approximately the same size as most of the other residential lots situated in the subject area—all of which are encumbered by the same five-foot widening easement and all of which were capable of residential use.

The evidence before the BSA showed that the lot in question was adjacent to a commercial area. While this circumstance may impair its desirability, it did not render the property unmarketable or unfeasible for residential use (see *Matter of Wilcox v Zoning Bd. of Appeals of City of Yonkers*, 17 NY2d 249, 254 [1966]; *Greenbaum v Board of Estimate of City of N.Y.*, 148 AD2d 92 [1989]). On the contrary, the BSA had before it uncontroverted evidence that the assessed valuation of the property had increased substantially since the time of GAC's purchase, and that the market value of the property as a vacant residentially zoned parcel, if sold, would yield a significant annualized profit to GAC—hardly a circumstance upon which the BSA could predicate a finding of financial hardship. The Supreme Court concluded that at least two of the required findings by the BSA were not supported by any evidence and that the BSA's determination to grant the variance was utterly irrational and prohibited by the express terms of the zoning resolution.

The alleged hardship suffered by GAC is unique to its use of the catering hall across the street, because GAC felt it needed to add a photography component to the catering hall. A finding of unique hardship, however, must be based upon the uniqueness of the land causing the plight, and not the uniqueness of the plight of the owner (*see Matter of Fasani v Rappaport,* 30 AD2d 588 [1968]). Moreover, the fact that the subject property abuts or is in close proximity to a commercial zone is not peculiar to that parcel, and cannot constitute the type of "hardship" that is required to obtain a use variance (*see Matter of Seinfeld v Murdock,* 259 App Div 694 [1940], *affd* 285 NY 718 [1941]). The fact that the property is on a thoroughfare with heavy traffic is similarly not a basis for the granting of a variance (*see Matter of Save the Pine Bush v Zoning Bd. of Appeals of Town of Guilderland,* 220 AD2d 90 [1996]; *Matter of Shiner v Board of Estimate of City of N.Y.,* 95 AD2d 831 [1983]).

Throughout the various submissions to this Court, it was argued by the BSA and GAC that the character of the surrounding area had substantially changed, from residential to commercial, to such a substantial degree that, as a practical matter, the area had developed in a manner inconsistent with that contemplated by the framers of the zoning code. That argument, at first blush, might seem persuasive, but it fails both procedurally and substantively. Procedurally, the argument appears to be a rationalization after the fact. The original application was based on GAC's assertion that the existing zoning regulations imposed a hardship on it due to the uniqueness of the parcel in question. Thus, the character of the neighborhood was not the focal point of the application before the BSA. Nonetheless, evidence was presented to the BSA and the BSA did make a finding with respect to the changed character of the neighborhood. Because "changed character of the neighborhood" was not asserted in GAC's application (nor was it the primary basis for the BSA's determination to grant the variance), the petitioner, in seeking to annul the BSA's determination, should not have been permitted to raise such issue before the Supreme Court. That which was not raised in the initial application cannot be raised for the first time in a CPLR article 78 proceeding or the subsequent appeal (*see Sprain Brook Manor Nursing Home v Glazer,* 6 AD3d 522 [2004]).

Substantively, the argument regarding the changed character of the neighborhood is also without merit. The applicant's burden was and is to establish hardship. The nearby existence of commercial uses similar to the one sought by GAC did not require the BSA to conclude that GAC's residentially-zoned

land is subjected to unnecessary hardship (*see Matter of Johnson v Town of Queensbury Zoning Bd. of Appeals,* 8 AD3d 741 [2004]). A zoning board may consider the effect of the uses previously permitted by it, and the cumulative effect on the area of existing uses plus the new one proposed by the application (*see Matter of Josato, Inc. v Wright,* 35 AD3d 470 [2006]). Even the fact that one or more use variances of the type sought by the applicant have been granted does not relieve the applicant of its burden to prove unnecessary hardship. The existing uses in the neighborhood are but one factor to consider along with all of the circumstances of the case, in determining whether such hardship exists (*see Matter of Cowan v Kern,* 41 NY2d 591 [1977]). Here, the Supreme Court found, and I concur, that while GAC's proposed use of the premises would not significantly alter "the essential character of the larger neighborhood, the granting of a variance in this case can only produce a negative effect on the viability of the remaining residential uses." Moreover, as the map of the lots in the area clearly show, there is no commercial use of the lots bordered by Hylan Boulevard and Otis and Bryant Avenues. Given the requisites of the controlling zoning ordinance, the potential proof of changed character is insufficient to satisfy the mandates for issuance of a variance of New York City Zoning Resolution § 72-21.

Based on the totality of the proof, the BSA should not have granted the application in question. For the foregoing reasons the judgment of the Supreme Court granting the petition and annulling the BSA's determination must be affirmed. I therefore respectfully dissent.