■ In the Matter of GEORGE PANTELIDIS, Respondent, v NEW YORK CITY BOARD OF STANDARDS AND APPEALS et al., Appellants, and JOSEPH E. SHEEHAN et al., Intervenors-Appellants. [841 NYS2d 41]—

Order and judgment (one paper), Supreme Court, New York County (Alice Schlesinger, J.), entered January 17, 2006, which, after a hearing, granted the petition brought pursuant to CPLR article 78 to annul the resolution of respondent Board of Standards and Appeals (BSA), dated January 14, 2003, denying petitioner an area variance, and directed BSA to issue the variance, affirmed, without costs.

The issue that divides this panel is whether, in this article 78 proceeding, we are required to remand the matter for further consideration by BSA, notwithstanding that the agency has already had an opportunity to receive all relevant evidence, and to consider all relevant factors, bearing on petitioner's application for an area variance for a glass-enclosed staircase at the rear of his townhouse. In a prior appeal in this very case, this Court has already determined that, under these circumstances, no such remand is necessary, and, in so ruling, we specifically rejected BSA's argument to the contrary (13 AD3d 242, 243 [2004], lv dismissed 4 NY3d 809 [2005]). The determination of this issue by our own Court now binds us as law of the case on a later appeal in the same proceeding. If BSA and intervenors-respondents believe that our earlier ruling was erroneous, they may seek review by the Court of Appeals. This Court should not change its ruling on an issue of law in the same case simply because a later appeal has come before a different panel.

Pursuant to our prior decision, Supreme Court conducted a hearing on whether petitioner, in erecting the glass-enclosed staircase, had relied in good faith on a construction permit invalidated only after the structure's completion. The evidence presented at the hearing permitted Supreme Court, sitting as trier of fact, fairly to find (see Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992]) that petitioner had erected the disputed structure in good-faith reliance on the subsequently invalidated permit. In view of that finding and Supreme Court's additional well-supported findings that the remaining relevant criteria

under New York City Zoning Resolution § 72-21 had been satisfied, the court properly concluded that petitioner was entitled to a variance authorizing the construction (*see Matter of Jayne Estates v Raynor*, 22 NY2d 417 [1968]).

Again, contrary to the dissent's contention, Supreme Court was not required to remand the matter to BSA after the hearing, notwithstanding that BSA, in denying the variance application, had not discussed two of the five criteria under Zoning Resolution § 72-21 (even though evidence on all five criteria had been presented to it) and had refused to consider the issue of good-faith reliance (*see* 13 AD3d at 243). For the reasons set forth in Supreme Court's decision, on this record, and in light of the determination that the structure was built in good-faith reliance on a duly issued permit, it would be arbitrary and capricious to deny the variance sought by petitioner (*see Matter of Police Benevolent Assn. of N.Y. State Troopers v Vacco*, 253 AD2d 920, 921 [1998], *lv denied* 92 NY2d 818 [1998] [declining to remand matter to agency for further proceedings, notwithstanding agency's failure to make findings on certain factual issues, since "the record is complete enough to enable the Court to render a final judgment on the merits," and "the agency is merely seeking a second chance to reach a different determination on the merits"]). In this regard, we note that the existing record is sufficiently developed to permit informed judicial review of all issues raised by the variance application; that BSA has already had an opportunity to consider all such issues; and that this matter has been the subject of litigation between petitioner and intervenors-respondents for more than seven years.

We also reiterate that our prior decision in this case (13 AD3d 242 [2004], *supra*)—which, again, is now binding on us as law of the case—indicates that remand to BSA for what would be the agency's third hearing on this matter is unwarranted. After all, on the prior appeal, we specifically rejected BSA's argument that the issue of good-faith reliance should be remanded to the agency for its determination (*id.* at 243). The dissent, while dismissing as "insupportable" our reading of the decision on the prior appeal, fails to come to grips with the relevant portion of that decision: "*Contrary to BSA's contention*, the court was not required to remand the good-faith issue for its determination" (*id.* at 243 [emphasis added]). As this statement shows, our prior decision resolved precisely the same point now argued by BSA for a second time, namely, whether, upon annulling an administrative determination that has not considered all relevant factors, a court is invariably required to remand to the

agency for further consideration, or, under appropriate circumstances, may determine such matters itself. Indeed, the case for a remand in the prior appeal was, if anything, stronger than the case for a remand here, since the record was then not sufficiently developed for resolution of the issue of good-faith reliance. Thus, the dissent's reasoning leads to the conclusion that our prior decision should have modified to remand the matter to BSA for a hearing on the good-faith issue, rather than affirm Supreme Court's determination to conduct such a hearing itself, which is what we did. At present, there is no need to remand for further administrative action, since the record is sufficiently developed for consideration of all five factors pertinent to the variance application in light of Supreme Court's finding on the good-faith issue.[1]

The dissent's view—that BSA's failure to discuss two of the five variance criteria means that we must remand for consideration of the unaddressed criteria, even though BSA already had an opportunity to consider them—suggests that BSA can protect its rulings by deciding them on a piecemeal basis, giving rise to repeated article 78 challenges and remands. This position, if taken to its logical conclusion, would leave the courts powerless to avoid repeated remands of the same matter for further administrative consideration. For example, assume that BSA determines to deny a variance application after considering only one of the five factors set forth in section 72-21. If the applicant then has that determination annulled in an article 78 proceeding, the matter must, according to the dissent, go back to BSA for another opportunity to consider the remaining four factors. Moreover, if BSA again denies the application based on consideration of only one of the four remaining factors, the court, on a successful article 78 challenge, may not consider the three factors BSA failed to consider, no matter how well-developed the record may be, but must, yet again, remand the matter to afford BSA a third opportunity to consider the three remaining factors. Thus, the logic of the dissent's approach leads to a rule under which each variance application may involve five administrative decisions, five trial court decisions on article 78 challenges, and, potentially, five appellate deci-

---

**1.** The dissent's reliance on CPLR 7804 (h) to reconcile its approach with our prior decision is unpersuasive, since the statutory provision does not address what issues are appropriate for trial before the court in an article 78 proceeding, nor does it identify the specific circumstances that may render it appropriate for a court to conduct such a trial. The issue of good-faith reliance in this case could have been (and should have been) addressed in the first instance by BSA, but, given BSA's refusal to do so, we held that Supreme Court correctly determined to try the issue itself.

sions—even if the record was sufficiently developed for consideration of all five factors after the first administrative hearing. While this—depending on one's perspective—may not amount to a "self-evident wrong," it seems to us that it is clearly not a self-evident *right*, especially where the law of the case does not require such a result.

Beyond question, judicial deference to administrative authority and expertise is an important principle, as illustrated by the decisional law cited by the dissent. Such deference does, however, admit of some elasticity, especially where a full administrative record is in existence, the agency has had an opportunity to rule on all issues, and the matter, although within the agency's purview, does not require resolution of highly complex technical issues. The cases cited by the dissent do not hold to the contrary. Thus, we do not believe that courts are required to give BSA (or any other government agency) the option of indefinitely prolonging administrative proceedings by repeatedly considering less than all of the factors relevant to an application.[2]

The dissent cites *Matter of Montalbano v Silva* (204 AD2d 457 [1994]) in arguing that an agency need not address all potential issues when one of those issues is dispositive. *Montalbano*, however, actually *sustained* the challenged administrative determination, and therefore does not stand for the proposition that, notwithstanding the existence of a fully developed record, a court must remand a matter to an agency that has ruled erroneously on one issue while failing to address other issues. The dissent seems to disclaim arguing for this proposition, but, if it is simply (as the dissent asserts) a "strawman" of our own making, we have difficulty seeing where the dissent's disagreement with us lies. We do not dispute that BSA was not absolutely required to address all five variance criteria once it had determined that three of them were not satisfied, given that petitioner was required to show that all five criteria were met. The question presented by this appeal is what a court is to do when presented, as here, with a decision in which the agency has determined less than all of the issues presented to it and has resolved those issues it did address in an arbitrary and capricious manner. This question simply was not presented in

---

2. The dissenter attempts to disown the implications of his own position, stating that "the judiciary certainly would not be powerless in the event the agency" acted in the manner posited by our hypothetical. In our view, given the full record now before us and BSA's deliberate and unjustifiable refusal even to consider the good-faith issue when it had an opportunity to do so (*see* 13 AD3d at 243), the present appeal presents an appropriate case for exercise of the judicial power the dissent concedes to exist.

*Montalbano*, where, to reiterate, the Court agreed with BSA's resolution against the petitioner of the one variance criterion the agency discussed, which rendered the remaining criteria moot.

We also do not agree with the analogy the dissent attempts to draw to judicial practice. While a court will often refrain from addressing issues that are academic in light of its determination of another issue, that does not preclude a higher court reviewing that decision (at least in civil cases) from addressing the issues the lower court failed to address where the record is sufficiently developed to allow the higher court (within the limits of its jurisdiction) to do so. The dissent does not advance its position by referring to the Court of Appeals' lack of jurisdiction to review the facts, since, in this case, both this Court and Supreme Court have jurisdiction to determine whether, on the record presented, a given result would be arbitrary or capricious (*see* CPLR 7803 [3]).

As to the dissent's claim that we and Supreme Court lack the "competence and expertise" to resolve the remaining outstanding issues on the existing record, neither the dissent, BSA, nor intervenors-respondents explain how the glass-enclosed staircase here in question raises land-use issues so complex and technical as to be beyond judicial competence. While there are undoubtedly many variance cases that courts will be unable to analyze without guidance from BSA on all relevant factors, this does not appear to be such a case. The dissent may believe that a high degree of technical expertise is required to determine whether allowing a one-time variance for the rear-wall, glass-enclosed staircase at issue will alter the "essential character of the neighborhood," but we respectfully disagree with this view.[3] Further, the present record is sufficiently developed to permit resolution of the question of petitioner's entitlement to a variance, as it is undisputed that BSA received evidence on all five variance factors at the hearing it held in this matter.[4]

The record provides no support for appellants' contention that the hearing court was biased. We have considered appel-

---

**3.** In this regard, we note that the noncompliance of the structure at issue consists in its reduction of the depth of petitioner's backyard to 24 feet, two inches, which is approximately six feet less than the minimum depth of 30 feet required by the zoning ordinance.

**4.** We are not persuaded by the weakly supported suggestion in BSA's opening appellate brief that "it might be appropriate for [the agency] to reexamine petitioner's evidence of expenditures or require additional evidence on this issue." BSA does not suggest any basis to believe that petitioner's alleged expenditure of $204,401 to build the structure at issue deviates materially from the reasonable cost of such construction.

lants' remaining arguments and find them unavailing. Concur—
Friedman, J.P., Nardelli, Gonzalez and Malone, JJ.

McGuire, J., concurs in part and dissents in part in a memo-
randum as follows: I agree with the majority that Supreme
Court correctly determined that petitioner acted in good faith
reliance on a building permit, which was revoked after comple-
tion of the work for which the permit was sought, in proceeding
with and completing the construction project. I also agree that
Supreme Court, upon making that finding, properly annulled
the resolution of respondent Board of Standards and Appeals
(BSA) denying petitioner's application for an area variance.
Supreme Court erred, however, in directing the BSA to issue
the variance. Accordingly, I dissent from the majority's determi-
nation to affirm that aspect of the order that directed the BSA
to issue the variance.

To issue a variance, the BSA must find that: (a) because of
"unique physical conditions" of the property, conforming uses
would impose "practical difficulties or unnecessary hardship";
(b) because of the unique physical conditions, a variance is "nec-
essary to enable the owner to realize a reasonable return" from
the zoned property; (c) the proposed variance "will not alter the
essential character of the neighborhood or district . . . ; will not
substantially impair the appropriate use or development of
adjacent property; and will not be detrimental to the public
welfare"; (d) the owner did not create the practical difficulties
or unnecessary hardship; and (e) only the "minimum variance
necessary to afford relief" is sought (NY City Zoning Resolution
§ 72-21). In its resolution denying petitioner's application for an
area variance, the BSA found that petitioner had failed to satisfy
three of the five elements required by section 72-21—subdivi-
sions (a), (b) and (d). The remaining two elements were not ad-
dressed by the BSA.

Prior to ruling on the merits of petitioner's CPLR article 78
petition to annul the resolution, Supreme Court ordered a hear-
ing pursuant to CPLR 7804 (h) to determine whether petitioner
acted in good faith reliance on the building permit in proceed-
ing with and completing the construction project. If petitioner
did so act, the BSA was required to consider petitioner's good
faith reliance (*Matter of Jayne Estates v Raynor*, 22 NY2d 417,
423 [1968]). Following the hearing Supreme Court determined
that petitioner had acted in good faith reliance on the permit, a
determination supported by the record from the hearing. In
light of its determination, Supreme Court found the resolution
arbitrary and capricious, annulled the resolution and directed
the BSA to issue the variance.

In my view, Supreme Court erred in directing the BSA to issue the variance; instead, Supreme Court should have remanded the matter to the BSA for reconsideration of the application. A finding that a party seeking a variance acted in good faith reliance does not give rise to a right to the variance (*see Matter of Rejman v Welch,* 112 AD2d 795, 796 [1985] [*Jayne Estates* "hold(s) only that expenditures made in reliance on an invalid building permit may be considered on the issue of unnecessary hardship in determining entitlement to a variance, not that good-faith reliance on an invalid building permit gives rise to a right to a variance"]). Rather, such reliance is merely a factor the BSA must consider in evaluating the application (*see Jayne Estates, supra; Rejman, supra; Matter of Cougevan v Martens,* 85 AD2d 890 [1981]). Moreover, contrary to Supreme Court's suggestion, in denying the application the BSA was not required to review all five of the elements set forth in section 72-21 (*see Matter of Montalbano v Silva,* 204 AD2d 457, 458 [1994] [the BSA, upon finding that petitioner failed to meet one of the elements required under section 72-21, was not required to address remaining elements]).

Accordingly, the BSA should have the opportunity to exercise its "wide discretion in considering applications for variances" (*Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals,* 95 NY2d 437, 440 [2000]; *see also Matter of Ifrah v Utschig,* 98 NY2d 304 [2002]) in considering petitioner's application anew in light of the finding that petitioner acted in good faith reliance on the permit. Only after the BSA makes findings based on its evaluation of the application can Supreme Court perform its limited function of reviewing the determination to ensure that it is supported by substantial evidence, i.e., is not arbitrary and capricious (*see Matter of James H. Maloy, Inc. v Zoning Bd. of Appeals of Town of Sand Lake,* 168 AD2d 874, 876 [1990]; *see also Matter of Hannett v Scheyer,* 37 AD3d 603 [2007]; *Matter of Filangeri v Pulichene,* 229 AD2d 702, 703-704 [1996]; *Matter of Kontogiannis v Fritts,* 131 AD2d 944 [1987]; *Matter of Sherman v Frazier,* 84 AD2d 401, 411 [1982]; *Matter of Mendozza v Board of Zoning Appeals of Town of Smithtown,* 30 AD2d 863 [1968]).

My fundamental disagreement with the majority is over the role of the judiciary in reviewing the determinations of an administrative agency, like the BSA, that possesses unique knowledge and expertise that the courts lack. Under settled law, those determinations are to be made in the first instance by the agency and courts have only the limited role of determining whether the agency's determination is supported by substantial

evidence (*see e.g. Matter of Concetta T. Cerame Irrevocable Family Trust v Town of Perinton Zoning Bd. of Appeals*, 6 AD3d 1091 [2004]; *Matter of Sundial Asphalt Co. v Dark*, 294 AD2d 585 [2002]; *Matter of Johnson v Village of Westhampton Beach*, 244 AD2d 335 [1997]). Under circumstances essentially identical to those presented here, courts routinely remit matters back to the agency for new determinations precisely because of the limited role of the courts and the superior competence of the agency (*see e.g. Hannett, supra*; *Filangeri, supra*; *James H. Maloy, Inc., supra*; *Kontogiannis, supra*; *Matter of Carcuro v Madigan*, 124 AD2d 294 [1986]; *Mendozza, supra*; *see also Sherman, supra*).

According to the majority it need not remit this matter back to the BSA and instead may (1) undertake its own review of and make its own findings on whether the proposed variance would "alter the essential character of the neighborhood or district" and is the "minimum variance necessary to afford relief" (§ 72-21 [c], [e]), and (2) make its own judgment on the ultimate question of whether the variance should be granted. In support of this position the majority cites nothing.

The majority's approach is inconsistent with other decisions of this Court discussing first principles of administrative law. Thus, in *Davis v Waterside Hous. Co.* (274 AD2d 318, 319 [2000], *lv denied* 95 NY2d 770 [2000]), this Court stated that "[d]eference to primary administrative review is particularly important where the matters under consideration are inherently technical and peculiarly within the expertise of the agency." And in *Capers v Giuliani* (253 AD2d 630, 633 [1998], *lv dismissed and denied* 93 NY2d 868 [1999]), this Court held that "[s]ince the very matters under review are inherently technical matters for which expertise is reposed in the Department of Labor, review by this Court without a prior agency determination will be inconsistent with sound principles of administrative review."

This Court's decision in *Burke's Auto Body v Ameruso* (113 AD2d 198 [1985]), also is directly on point. As we stated: "Nevertheless, Special Term abused its discretion in directing respondent to award the contract to petitioner. In an article 78 proceeding, the judicial function is limited to the review of the propriety of the determination in terms of whether the administrative body acted in an arbitrary or capricious manner. The court's jurisdiction is restricted by CPLR 7803 and does not afford '*original* jurisdiction to direct the manner in which an administrative agency shall perform its functions.' (*Matter of Rocco v. Board of Trustees*, 98 AD2d 609, 610.) While the court is empowered to determine whether the administrative body

acted arbitrarily, *it may not usurp the administrative function by directing the agency to proceed in a specific manner*, which is within the jurisdiction and discretion of the administrative body in the first instance" (113 AD2d at 200-201 [second emphasis added]).

The majority's position also is at odds with the decision of the Court of Appeals in *Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.* (91 NY2d 413 [1998]). As the Court stated, "[t]his Court has frequently recognized that the BSA is comprised of experts in land use and planning, and that its interpretation of the Zoning Resolution is entitled to deference" (*id.* at 418-419). Accordingly, in deferring to the BSA's determination that a radio station and tower constituted an "accessory use" within the meaning of the Zoning Resolution, the Court noted that the BSA's analysis was "to a great extent, fact-based" and "is one that will clearly benefit from the expertise of specialists in land use planning" (*id.* at 420). Stressing that the BSA included such specialists, the Court stated that it "may not lightly disregard that determination" (*id.*).

The Court also made clear that the deference owed by the courts to the BSA is rooted in fundamental constitutional precepts. Thus, the Court observed that "[s]eparation of powers concerns also support the decision we reach today" (*id.* at 422). An accessory use determination "must be based upon an individualized assessment of need. The BSA is the body designated to make this determination, and courts may intervene only if its determination is arbitrary or capricious" (*id.* at 423; *see also Matter of Toys "R" Us v Silva*, 89 NY2d 411, 418 [1996] ["The BSA, composed of five experts in land use and planning, is the ultimate administrative authority charged with enforcing the Zoning Resolution"]).

Obviously, the BSA is the body designated to make the ultimate determination that is at issue in this case, whether to grant an area variance. Just as obviously that determination also is a "fact-based" one, the making of which would "benefit from the expertise of specialists in land use planning." If the BSA made the "ultimate determination" on this matter, it clearly would be "entitled to deference" and could not be "lightly disregard[ed]." The majority, however, does not allow the BSA to bring its expertise to bear. Instead, although it lacks the BSA's expertise, the majority presumes to make the "ultimate determination" and forsakes the limited function assigned to it by the Legislature of reviewing the agency's determination. Without citing a single case that

legitimizes doing so, the majority explicitly deprives the BSA of an opportunity to exercise its "wide discretion" (*SoHo Alliance*, 95 NY2d at 440), and, largely if not exclusively on the strength of Supreme Court's finding of good faith, grants the variance sought, despite the adverse findings the BSA did make.

The majority does not deal with any of these precedents. Instead, it erroneously relies on *Matter of Police Benevolent Assn. of N.Y. State Troopers v Vacco* (253 AD2d 920 [1998], *lv denied* 92 NY2d 818 [1998]). In the first place, however complete the record in this case otherwise may be, it lacks something that this Court does not have the competence to supply: an evaluation of the application by the BSA, the body charged with using its expertise to make "often sensitive planning decisions" (*Matter of Cowan v Kern*, 41 NY2d 591, 599 [1977]), in light of the finding of good faith reliance and *all* of the factors it is charged with evaluating. Second, this is not a case in which the administrative agency is seeking a second chance to do what it should have done previously. As noted, prior to denying petitioner's application for a variance the BSA was not required to review all five of the elements set forth in section 72-21 (*Montalbano*, 204 AD2d at 458). Without citing any supporting authority, the majority suggests that deciding applications on a "piecemeal basis" is a self-evident wrong. Of course, however, this Court not uncommonly saves itself time and trouble by not addressing every one of a party's arguments when it believes that doing so would be unnecessary in light of the determination or determinations the Court does make. Presumably, the majority does not mean to call into question the legitimacy of this practice. By repeatedly likening the BSA's determination not to address two of the five elements to a "fail[ure]" of a lower court to address all the issues, however, the majority only confirms that it is suggesting that deciding cases on a piecemeal basis is a self-evident wrong.

Moreover, a caveat should be added to the majority's assertion that a higher court is not precluded "from addressing the issues the lower court failed to address where the record is sufficiently developed to allow the higher court . . . to do so." Regardless of how developed the record may be, the higher court will be precluded from addressing issues that it lacks the authority to address. Thus, for example, the Court of Appeals cannot review any issues of fact that this Court did not address in the belief that their resolution was not necessary to the disposition

of the appeal. In such event, the necessary result is the very "piecemeal" review the majority decries.[1]

Here, similarly, "piecemeal" review is the price that must be paid if we confine ourselves to performing the limited office with which we are charged: determining whether a prior determination by the administrative agency charged with making, and possessing the expertise to make, such determinations is supported by substantial evidence. To the end of avoiding that price, the majority goes beyond implicitly performing the far broader office assigned by law to the BSA, and goes beyond assuming that the BSA would deny the variance. The majority goes so far as to pronounce that "it would be arbitrary and capricious to deny the variance sought by petitioner." The majority's clairvoyance and confidence are breathtaking. The majority has no idea at all what the BSA—which assuredly knows rather more about the subject than the majority—might say or what it might find about the extent to which the proposed variance would "alter the essential character of the neighborhood" or whether it would be the "minimum variance necessary to afford relief" (§ 72-21 [c], [e]).

The majority does not come to grips with *Montalbano (supra)*. Rather, the majority observes that the case "does not stand for the proposition that, notwithstanding the existence of a fully developed record, a court must remand a matter to an agency that has ruled erroneously on one issue while failing to address other issues." But the majority thus vanquishes a strawman for I certainly do not assert *Montalbano* stands for that proposition. Rather, I rely on *Montalbano* for a different proposition. To repeat it: in denying the application the BSA was not required to review all five of the elements set forth in section 72-21 (204 AD2d at 458 ["Consequently, it was unnecessary for the BSA to address the remaining four factors enumerated in New York City Zoning Resolution § 72-21"]). Under the majority's approach, by contrast, the BSA acts at its peril whenever it concludes that it need not address one or more factors, because it can be found to have forfeited its authority. *Montalbano* affords additional, albeit not dispositive, support for my position if, as I submit, the BSA is not required thus to act at its peril.

Nor does the majority come to grips with the cases holding that good faith reliance on an invalid permit does not give rise

---

1. In a particular case, of course, such "piecemeal" review can cause delay. But a court or administrative agency that has the authority not to address all conceivable issues when it believes that doing so is not necessary will be able both to resolve each matter more expeditiously and to turn more expeditiously to the next matter.

to a right to the variance. If the majority agrees with this point of law, it should explain how its position is consistent with it. After all, the only specific factor the majority identifies in support of its determination that the variance should be granted is "that the structure was built in good-faith reliance on a duly issued permit."

In our prior decision in this case we held only that Supreme Court did not err in directing a hearing on the issue of whether petitioner had acted in good faith reliance on the permit (13 AD3d at 242-243). In this regard, we noted that "[a] court is specifically commanded to conduct a trial 'forthwith' when a factual issue is raised in an article 78 proceeding before it" (*id.* at 243). The majority, however, makes two erroneous and related assertions about our prior decision. First, the majority claims that our prior decision anticipates the dispute now before this Court and "indicates that remand to BSA for what would be the agency's third hearing on this matter is unwarranted." Suffice it to say that no such "indicat[ion]" appears in our prior decision and we are not in any event bound by "indicat[ions]" of other panels.

The other assertion is much more ambitious. The majority writes that "[t]he issue that divides this panel is whether, in this article 78 proceeding, we are required to remand the matter for further consideration by BSA." With that much I agree. The majority, however, goes on to assert that "[i]n a prior appeal in this very case, this Court has already determined that, under these circumstances, no such remand is necessary, and, in so ruling, we specifically rejected BSA's argument to the contrary."

This account of our prior decision is insupportable. The BSA appealed from that portion of Supreme Court's order "denying petitioner's application for a variance to the extent of directing a hearing upon the issue of whether petitioner in erecting the disputed structure acted in 'good faith reliance' on the application, plans and permit approved by respondent New York City Department of Buildings" (13 AD3d at 242). In affirming, we held only that Supreme Court did not err in directing a hearing. Obviously, we could not have held more than that and no language in the opinion suggests otherwise. To the contrary, we wrote that "[c]onsideration of whether petitioner acted in good-faith reliance on a then-valid DOB permit in constructing a glass-enclosed stairwell at the rear of his building was *relevant* to determining if petitioner was entitled to a variance" (*id.* [emphasis added]). The majority, however, implicitly rewrites that sentence. By its lights, what we really wrote was, "[c]onsid-

eration of whether petitioner acted in good-faith reliance on a then-valid DOB permit . . . was *dispositive* of petitioner's claim that he was entitled to a variance."[2] Not surprisingly, and the majority does not contend otherwise, petitioner has never argued on this appeal that an affirmance is dictated by our holding on the prior appeal.

In the course of advancing this newly-minted "law of the case" claim, the majority writes that "the dissent's reasoning leads to the conclusion that our prior decision should have modified to remand the matter to BSA for a hearing on the good-faith issue, rather than affirm Supreme Court's determination to conduct such a hearing itself, which is what we did." To the contrary, my reasoning leads to a different and rational conclusion. As our prior decision expressly stated (13 AD3d at 243), we affirmed Supreme Court's determination to hold a hearing on the good faith issue because of CPLR 7804 (h), which states that "[i]f a triable issue of fact is raised in a proceeding under this article, it shall be tried forthwith." Because the good faith issue presents such a "triable issue of fact," one that is amenable to judicial resolution without a concomitant intrusion into the agency's particular competence and expertise, it hardly follows that all conceivable issues fall within the sweep of CPLR 7804 (h). In my judgment, the issues that remain to be resolved here—whether the proposed variance would "alter the essential character of the neighborhood [or] substantially impair the appropriate use or development of adjacent property [or] be detrimental to the public welfare" (§ 72-21 [c]), and whether it would be the "minimum variance necessary to afford relief" (§ 72-21 [e])—should not be resolved by the judiciary in the absence of an improper failure by the agency charged with making such complex determinations to exercise the authority conferred on it by the Legislature.[3] One other logical error by the majority should be corrected. Because I take the position that the BSA was not required to review all five of the elements

---

2. Moreover, the contention by the BSA that we "specifically rejected" is not the one the majority disingenuously identifies. As we stated, "[c]ontrary to BSA's contention, the court was not required to remand the good-faith issue for its determination" (13 AD3d at 243).

3. Although the majority concedes that "there are undoubtedly many variance cases that courts will be unable to analyze without guidance from BSA on all relevant factors," it goes on to assert that "this does not *appear* to be such a case" (emphasis added). Unlike the majority, I do not know whether "a high degree of technical expertise is required to determine whether allowing a one-time variance for the rear-wall, glass-enclosed staircase at issue will alter the 'essential character of the neighborhood.' " I do believe, however, both that considerable expertise is necessary to make the ultimate determination of whether to grant the variance and that this Court does not have it. Moreover,

set forth in section 72-21, it hardly follows that my position entails the proposition that the BSA has the right under all circumstances to consider any subset of those elements it chooses to consider. Nor does the "logic of [my] approach," as the majority puts it, "lead[ ] to a rule under which each variance application may involve five administrative decisions, five trial court decisions on article 78 challenges, and, potentially, five appellate decisions—even if the record was sufficiently developed for consideration of all five factors after the first administrative hearing." Although I do think that the judiciary should not assume that either the BSA or any other agency would act in such an irresponsible manner, the judiciary certainly would not be powerless in the event the agency so acted or gave reason to believe it would act. Indeed, in many and even most cases like this one, there may be excellent reasons for the reviewing court to make clear, when it remands the matter back to the agency, that the agency should review all the elements it did not previously consider. In this case, however, the BSA has not failed to heed such a judicial direction, the record does not include findings by the BSA concerning two of the five statutory elements and there is no good reason for this Court to act beyond its competence and expertise.[4]

The majority writes that "[t]he dissenter attempts to disown the implications of his own position, stating that 'the judiciary certainly would not be powerless in the event the agency' acted in the manner posited by our hypothetical." This charge is all rhetoric and no substance. Because my position is not the extreme one the majority would like it to be—i.e., that the judiciary under all circumstances always must remand to the agency when the agency has not made one of the statutory findings—the majority charges that I "attempt to disown the implications of [my] position." Under this reasoning, merely by stating my position I disown its implications. The majority does not take

---

this Court's function is to review determinations on these matters made in the first instance by BSA.

4. In our prior decision, we referred only to the BSA's "pointed resolve . . . not to consider [the good-faith issue]" (13 AD3d at 243), and neither discussed the BSA's position with respect to why it did not nor purported to find that the BSA thus had acted improperly. Nonetheless, the majority apparently considers the "pointed resolve" statement to be tantamount to a finding of a "deliberate and unjustifiable refusal [by the BSA] even to consider the good-faith issue when it had an opportunity to do so" that warrants depriving the BSA of an opportunity to complete the statutorily required review. The majority's rush to deprive the BSA of that opportunity is all the more inappropriate given the majority's concession that "BSA was not absolutely required to address all five variance criteria once it had determined that three of them were not satisfied."

the position at the opposite extreme, that the BSA always forfeits its authority whenever it does not initially make findings on all five variance criteria. At least as I understand the majority, some finding of improper behavior by the BSA is necessary, like the finding of a "deliberate and unjustifiable refusal even to consider the good-faith issue" that the majority makes. But with equal illogic, I could assert that the majority attempts to disown the implications of its own position, stating it "do[es] not dispute that BSA was not absolutely required to address all five variance criteria once it had determined that three of them were not satisfied."[5]

For these reasons, I respectfully dissent from the majority's determination that Supreme Court properly directed the BSA to issue the variance.

---

**5.** Contrary to the majority's characterization of its position as "weakly supported," the BSA has provided substantial support for its position that it would be appropriate to require additional evidence regarding costs in determining the issue of undue hardship. As the BSA points out, petitioner largely failed to introduce documentary evidence of what he had actually paid for the construction. Although petitioner acted as the general contractor, he gave vague and imprecise testimony on who had paid for the construction.