[861 NYS2d 316]

In the Matter of DANIEL PECKHAM, Respondent, v JUDITH A. CALOGERO, as Commissioner of the State of New York Division of Housing and Community Renewal, et al., Respondents, and CHELSEA PARTNERS, LLC, Appellant.

First Department, June 26, 2008

*Belkin Burden Wenig & Goldman, LLP*, New York City (*Magda L. Cruz, Kristine L. Grinberg, Sherwin Belkin* and *Kara Schechter Rakowski* of counsel), for appellant.

*Stuart W. Lawrence*, New York City (*Stuart W. Lawrence, Aurore C. DeCarlo, Susan Crumiller* and *Carrie Goldberg* of counsel), for Daniel Peckham, respondent.

*Gary R. Connor*, New York City (*Caroline M. Sullivan* and *Roderick J. Walters* of counsel), for Division of Housing and Community Renewal, respondents.

*Kossoff & Unger*, New York City (*Lester Breisblatt* of counsel), amici curiae.

## OPINION OF THE COURT

SAXE, J.

Once an administrative agency has decided a matter, based upon a proper factual showing and the application of its own regulations and precedent, the parties to that matter are entitled to have the determination treated as final. Although a remand may be appropriate where the agency has made the type of substantial error that constitutes an "irregularity in vital matters" (*Matter of Porter v New York State Div. of Hous. & Community Renewal*, 51 AD3d 417, 418 [2008]), no remand is appropriate where the agency is "merely seeking a second chance to reach a different determination on the merits" (*Matter of Pantelidis v New York City Bd. of Stds. & Appeals*, 43 AD3d 314, 315 [2007], *affd* 10 NY3d 846 [2008] [internal quotation marks omitted]). There was no proper basis for the remand to the Division of Housing and Community Renewal (DHCR) ordered by the motion court in this matter, and we therefore reverse.

The ruling made by DHCR on petitioner's petition for administrative review (PAR) properly disposed of the presented issues and was not arbitrary, capricious, irrational, or contrary to law; nor was it based upon an incomplete factual record.

There was, in short, no legitimate reason for a remand. Although DHCR now takes the position that the motion court was correct and that the agency's own PAR ruling was improper because it was not founded upon a conclusive agency definition of "demolition," DHCR certainly did not take that position at any point in the underlying proceeding prior to this appeal. Moreover, even assuming that such a conclusive definition by DHCR were currently lacking, the present matter does not turn on the fine points of such a definition; under any definition previously used by the agency or the courts, the plan submitted by respondent Chelsea Partners constitutes a demolition. Nor was it necessary, or appropriate, to remand the matter on the issue of Chelsea Partners' financial ability to complete the project.

Facts

Respondent Chelsea Partners owns a building located at 244 West 21st Street. Petitioner is the sole remaining rent-stabilized tenant therein. In May 2004, Chelsea Partners filed an application with DHCR, requesting permission not to renew petitioner's lease because it was going to demolish the building. The existing building is four stories and 40 feet deep, with eight residential units. Chelsea Partners planned to construct a six-story, 70-foot-deep building with 12 dwelling units. Its plan explained that:

> "The Demolition will entail the removal of (a) the roof, (b) entire interior of the Building, (c) all partitions, (d) floor joints [sic], (e) subfloors, and (f) building systems. In addition, much of the facade, and the entire rear wall of the Building will be removed. Once the demolition is completed, one will be able to stand on the roof of an adjoining building and look straight down to the basement of this Building."

In opposition, petitioner argued that Chelsea Partners' application with the Department of Buildings (DOB) listed the job as a reconstruction or an alteration. He also argued that the evidence of financial ability could not be relied upon because it established that the funds in question were held in the name of an entity other than Chelsea Partners.

On December 13, 2005, the Rent Administrator granted Chelsea Partners' application, stating:

> "[T]he owner has satisfied the conditions set forth

under Section 2524.5 (a) (2) (i) of the New York [State] Rent Stabilization Code.

"The owner has submitted evidence that they [sic] have obtained the necessary approval from the New York City Department of Buildings[.] Also, the owner submitted evidence of financial ability to complete the project."

Petitioner filed his PAR, arguing, inter alia, that the owner failed to provide proof of its financial ability to complete the undertaking.

On July 27, 2006, DHCR denied petitioner's PAR, saying that the owner had shown (1) that it had the financial ability to complete the undertaking, by submitting a printout from Chase bank showing $4,800,000 in an account, and a letter from the bank stating that those funds were deposited for the purpose of funding the project at issue, and (2) that it intended to demolish the premises, established through a letter from an architect, building plans approved by DOB, and photographs.

Petitioner then brought the underlying CPLR article 78 proceeding, arguing that DHCR determines what constitutes a "demolition" on an ad hoc basis and that a demolition is properly understood, as it is defined in the dictionary, to mean "razing a structure to the ground." He also protested that DHCR fails to set forth the standard by which it determines whether an owner has demonstrated its financial ability to perform the undertaking. Despite the agency's assertion that the challenged order was properly supported, the motion court granted the petition to the extent of remanding the matter to DHCR "to clarify the standard used to determine a 'demolition' and whether this project is a 'demolition,' and to clarify the financial ability of Chelsea [Partners] to complete the project" (2007 NY Slip Op 32087[U], *18). Now, before this Court, DHCR reverses its position completely, asserting that clarification of the definition of demolition and the owner's financial ability is necessary.

Analysis

Initially, DHCR challenges the right of Chelsea Partners to appeal from the motion court's ruling on the article 78 petition, pointing out that Chelsea Partners has no appeal as of right and did not request leave to appeal. However, while the posture of this matter leaves the aggrieved owner without a right to appeal at this point, justice dictates that on our own motion we

grant Chelsea Partners leave to appeal (*see Matter of DeJesus v Roberts*, 296 AD2d 307, 310 n [2002], *lv denied* 99 NY2d 510 [2003]; *Matter of Foster v Goldman*, 253 AD2d 823 [1998]). Upon appeal, we should reverse the order and dismiss the proceeding, because the issues the motion court saw fit to remand to DHCR were inappropriate for remand.

## Demolition

An argument "may not be raised for the first time before the courts in an article 78 proceeding" (*Matter of Yonkers Gardens Co. v State of N.Y. Div. of Hous. & Community Renewal*, 51 NY2d 966, 967 [1980]). Petitioner argued before the Rent Administrator that Chelsea Partners' project was not a demolition because its application with DOB listed it as a reconstruction or alteration rather than a demolition. In his PAR, petitioner no longer made this argument; his only demolition-related argument was that the landlord had performed demolition before its application was approved. It was only in this article 78 proceeding that petitioner argued that DHCR lacked appropriate standards for what constitutes a demolition. Thus, the issue was not even properly before the court.

Even had the issue been properly and timely raised, petitioner's argument would have been unavailing, since there is no true uncertainty as to the agency's definition of demolition. At least as early as 1981, DHCR's predecessor, the Conciliation and Appeals Board of the City of New York (CAB), stated that "demolition" did not require razing to the ground, and that "the total gutting of a building's interior" sufficed (*Villas of Forest Hills*, CAB Op 15,680, at 103-04). In May 4, 1998 and April 13, 2001 opinion letters from DHCR responding to property owners' inquiries, the agency stated that it may grant a demolition application where the outer walls and structural supports of the building will remain intact, with only the interior being totally gutted.

In 2006, DHCR harbored no doubt that the landlord's gutting of the interior residential areas of a building constituted a demolition. In *Matter of Schneider* (DHCR Admin Review Docket No. TB420052RT, at 7 [Mar. 16, 2006]), in concluding that the owner's challenged plans constituted a demolition, the agency remarked that "the Commissioner is bound by the rent agency's definition of a demolition as set forth in, among other things, the applicable rent laws and regulations, the rent agency's prior orders, and the relevant New York case law" (*see also Matter of*

*Mazzia*, DHCR Admin Review Docket No. PF-410002-OE [Sept. 27, 2002]; *Matter of Dalabar Co.*, DHCR Admin Review Docket No. ARL-04567-L [Jan. 31, 1989]).

Over the years, courts reviewing the issue have reiterated and approved the agency's understanding of the term demolition to cover gutting the interior of premises (*see Application of Gioeli*, 221 NYS2d 568 [Sup Ct, NY County, Mar. 31, 1961]; *Gewritz v Altman*, NYLJ, June 4, 1970, at 2, col 2, *affd* 35 AD2d 688 [1970]; *Matter of Mahoney v Altman*, 63 Misc 2d 1062 [Sup Ct, NY County 1970]; *Matter of 412 W. 44th St. Corp.*, NYLJ, Oct. 19, 1971, at 2, col 5 [Sup Ct, NY County]).

There may have been occasions when the planned work involved something less than a total gutting, creating some legitimate question about whether it qualified as demolition, such as in *Matter of Mahoney v Altman* (63 Misc 2d 1062 [1970], *supra*), where it was held that demolition was established even where only the portion of the building in which the housing accommodations were located was being gutted. But there has not been any doubt, at any time, that a gutting which left external walls intact but removed all internal structures constituted a demolition. So, even assuming that the agency can be said to lack a conclusive definition of the term demolition to clarify all possible circumstances, that lack would be irrelevant to this matter, because there can be no question that in this case the owner's plans constituted a demolition. As DHCR itself said in denying the PAR, this owner clearly intends to "demolish" the premises.

The cases cited by the motion court to support its assertion that there exists a "troubling" (2007 NY Slip Op 32087[U] at *14) inconsistency in the agency's interpretation of the term demolition are simply inapposite and show no such inconsistency. *Matter of Robbins v Herman* (11 NY2d 670 [1962]) did not involve a gutting of the interior of the building; the plans proposed subdividing existing apartments and combining others and upgrading building systems. The *Robbins* Court's conclusion that this did not constitute a demolition is consistent with all the foregoing authorities. *Weitzen v 130 E. 65th St. Sponsor Corp.* (86 AD2d 511 [1982]) concerned a stay of demolition in view of the owner's application for an *alteration* permit from the Department of Buildings, and had nothing to do with DHCR or its definition of the term demolition. *Malta v Brown* (12 Misc 3d 1164[A], 2006 NY Slip Op 51028[U] [Civ Ct, NY County 2006]) involved an owner's use holdover proceeding; DHCR was

not involved, the issue of demolition was not relevant, and Rent Stabilization Code (9 NYCRR) § 2524.5 (a) (2) was not applicable.

Ultimately, the only authority that can be cited to support the contention that the owner's plans here do not fall within some definition of demolition is a dictionary definition that defines demolition as "razing a structure to the ground." This is not a sufficient ground to challenge the agency's clear and longstanding understanding of the term demolition as applicable here.

DHCR correctly observes that there exists no specific definition of the word demolition in the Rent Stabilization Law or the regulations. Although this absence has not, to date, caused any confusion or hampered any decision-making, the agency certainly has the right, going forward, to take any actions available to it under its authority. It may issue such operational bulletins and advisory opinions as it sees fit. What it may not be permitted to do is to rescind a ruling it properly made, upon a complete record, in which it correctly found, based upon precedent, that the planned work constituted a demolition, in order to create and apply newly-formulated definitions.

### Financial Ability

In its application, Chelsea Partners submitted a printout from Chase bank indicating that Three Stars Associates LLC had an account containing $4.8 million, and a letter from the bank to Three Stars reciting that Larry Tauber, a member of Chelsea Partners, had indicated that those funds were to be used for the construction on the subject property. In his initial opposition to the application, petitioner argued that the fact that Three Stars had money did not prove Chelsea Partners' financial ability. However, after the Rent Administrator rejected that argument, petitioner never made it again; he raised it neither in his petition for administrative review nor in his article 78 petition, in which he argued that "DHCR offers no . . . standard against which it measures how an owner demonstrates it possesses the financial ability to perform the undertaking." He must therefore be deemed to have abandoned the currently resuscitated argument that the evidence did not establish the owner's financial ability (*see generally Matter of East Harlem Bus. & Residence Alliance v Empire State Dev. Corp.*, 273 AD2d 33, 34 [2000]).

In any event, there was nothing irrational in DHCR's determination that Chelsea Partners had the requisite financial ability. It was entitled to accept bank documentation pertaining to

Three Stars as sufficiently establishing the finances of Chelsea Partners. As the motion court acknowledged, the bank's letter is addressed to Larry Tauber, who "is also the 'agent' for . . . Chelsea Partners LLC, whose address is the same as Three Stars" (2007 NY Slip Op 32087[U] at *3 n 2). In *Matter of Mahoney v Altman* (63 Misc 2d 1062, 1065 [1970], *supra*), the landlord had "submitted letters of credit issued by a commercial bank to the contractor hired by . . . landlord," and the court held that showing of financial responsibility to be sufficient. The equivalent showing was made here and is similarly sufficient.

## Propriety of Remand

There are many appropriate grounds for remand of a matter to the agency. As this Court said in *Matter of Porter v New York State Div. of Hous. & Community Renewal* (51 AD3d 417 [2008]), DHCR has the authority to modify or revoke any order that was the result of illegality, irregularity in vital matters or fraud (citing Rent Stabilization Code [9 NYCRR] § 2527.8). The court may also remand a matter to the agency where fact-finding or technical analysis is needed for a proper adjudication (*see e.g. Matter of Hakim v Division of Hous. & Community Renewal*, 273 AD2d 3 [2000]). However, there is every indication that in this matter, as in *Matter of Pantelidis v New York City Bd. of Stds. & Appeals* (43 AD3d 314, 315 [2007], *affd* 10 NY3d 846 [2008], *supra*), the agency was "merely seeking a second chance to reach a different determination on the merits" (internal quotation marks omitted).

Our citizens rely on our administrative agencies, just as they rely on our courts, to decide matters before them neutrally, in accordance with established precedent that interprets the relevant laws, rules and opinions. Here, the record before the agency was quite sufficient to permit it to determine whether the owner had demonstrated financial ability to complete the project and whether the planned work constituted a demolition. The agency's determinations of those issues were rational and completely in accord with well established principles. There was no legitimate ground for the remand by the motion court, and there is no valid basis to uphold it now.

Accordingly, upon granting leave to appeal to Chelsea Partners, the order and judgment (one paper) of the Supreme Court, New York County (Paul G. Feinman, J.), entered July 12, 2007, which granted this article 78 petition to the extent of

remanding the matter to respondent Division of Housing and Community Renewal for further findings and determination, should be reversed, on the law, without costs, the petition denied, DHCR's determination permitting respondent Chelsea Partners not to renew petitioner's rent-stabilized lease confirmed, and the proceeding dismissed.

ACOSTA, J. (dissenting). Supreme Court correctly remitted the proceeding to the Division of Housing and Community Renewal (DHCR) for further fact-finding and determination. I therefore respectfully dissent and would affirm. The majority's insistence that "there is every indication" that DHCR is now seeking to reach a different result has no support in the record, other than a self-serving letter from a landlord. Under the guise of finality, the majority refuses to acknowledge DHCR's legislatively granted prerogative and duty to develop rent regulations.

The undisputed facts are straightforward. Petitioner commenced this CPLR article 78 proceeding against DHCR, and Supreme Court remanded the matter to DHCR to clarify the standards it uses to determine what constitutes a "demolition," and whether the owner has the financial ability to complete the project. Chelsea Partners thereafter sought to appeal the order, and DHCR challenged its right to do so. DHCR alternatively moved to affirm the order to the extent it permits DHCR to reconsider and review the issues raised therein. The majority is correct that Chelsea Partners does not have an appeal as of right (see CPLR 5701 [a] [1]; [b] [1]). However, under the circumstances of this case the majority is incorrect to sua sponte grant Chelsea Partners leave to appeal, reverse the order, and dismiss the proceeding without giving DHCR an opportunity to complete its fact-finding and issue a final determination.

On appeal, DHCR concedes that there is no definition of demolition in the Rent Stabilization Law or the Rent Stabilization Code, and that it has heretofore made its determinations on a case-by-case basis. DHCR also concedes that it erroneously did not address the weakness of the evidence presented on the issue of Chelsea Partners' financial ability to complete the proposed demolition. The remand thus gave DHCR the opportunity it now requests to once and for all create the very standards that courts will scrutinize to determine if its handling of demolition applications has a rational basis.

The remand is also consistent with Rent Stabilization Code (9 NYCRR) § 2527.8, which empowers DHCR to issue a superseding order modifying or revoking *any* order issued by it where it

finds "that such order was the result of . . . irregularity in vital matters." Here, there is an irregularity inasmuch as DHCR lacks a standard for determining demolition applications. DHCR should therefore be encouraged, not chastised, for finally showing an interest in establishing a transparent working standard to guide its endeavors.

This point is underscored by the fact that the Legislature has recognized that certain matters require the expertise of DHCR in the first instance, and thus "has specifically authorized that agency to administer questions relating to rent regulation." (*Davis v Waterside Hous. Co.*, 274 AD2d 318, 319 [2000], *lv denied* 95 NY2d 770 [2000].) "It is clear beyond question that the Legislature intended disputes over a landlord's right to demolish a regulated building to be adjudicated by the DHCR" (*Sohn v Calderon*, 78 NY2d 755, 765-766 [1991]) and equally clear that DHCR has the inherent power in the first instance to determine whether an owner has the right under the Rent Stabilization Code to evict rent-regulated tenants and to demolish its building (*see generally Matter of Pantelidis v New York City Bd. of Stds. & Appeals*, 43 AD3d 314, 317 [2007], *affd* 10 NY3d 846 [2008] ["Beyond question, judicial deference to administrative authority and expertise is an important principle"]).

Indeed, this very same panel stated in *Matter of Porter v New York State Div. of Hous. & Community Renewal* (51 AD3d 417, 418 [2008]):

> "Rent Stabilization Code (9 NYCRR) § 2527.8 provides that 'DHCR, on application of either party, or on its own initiative, and upon notice to all parties affected, may issue a superseding order modifying or revoking any order issued by it under this or any previous Code where the DHCR finds that such order was the result of illegality, irregularity in vital matters or fraud.' The Court of Appeals has confirmed DHCR's broad powers and authority to alter its prior determinations on remission, and this Court has held that remission for further fact-finding and determination is appropriate where, as here, DHCR concedes an error in the issuance of its determination, and where the determination resulted from an 'irregularity in vital matters' " (citations omitted).

The majority, in citing to *Porter*, concedes that DHCR has the authority to modify or revoke any order based on irregularity or

a conceded error. It would therefore be anomalous in this instance to preclude DHCR from doing so. Indeed, as this and the *Porter* case demonstrate, the lack of a uniform and transparent standard will lead to unnecessary litigation, which will be a drain not only on DHCR and the litigants involved, but on the judiciary as well.

Once DHCR acknowledges that it has failed to provide guidance on an issue arising from the statutes that the Legislature has vested it with authority to administer, and concedes an error in reaching a determination, we should not second-guess its position. This is especially true since we may ultimately pass judgment on the revised decision and its application of a newly developed standard. A landlord's self-serving allegations should not trump a legislative policy choice to give DHCR the power to recall a nonfinal determination.

I also disagree with the majority that DHCR decided the matter upon a proper factual showing and application of its own regulations and precedent. The majority ignores DHCR's acknowledgment that the record on Chelsea Partners' financial ability is "obviously" incomplete. Little weight should be placed on precedent based on a standard devoid of the very elements that would permit us to properly review the administrative determination. DHCR's decision to grant the application did not point to any specific facts or legal or administrative precedent that guided its decision. Rather, DHCR stated in a conclusory manner that the owner's plans constituted a demolition and that the owner had the financial ability to complete the project. Without more, there is no guidance as to how DHCR reaches its determinations and whether those determinations are arbitrary and capricious (*see generally Matter of Sherwood 34 Assoc. v New York State Div. of Hous. & Community Renewal*, 309 AD2d 529, 532 [2003]). It is incongruous to maintain that DHCR decided the matter on a full record when its decision fails to indicate the facts that were considered and to which a transparent, uniform standard was applied.

Judicial deference is of utmost importance where, as here, the agency's function is aimed at addressing serious social concerns. The Rent Stabilization Law and regulations promulgated thereunder seek to provide safe and affordable housing to residents of New York City in an already crowded market. It is vital that DHCR pursue this through an objective and clear process to ensure that those who are entitled to rent-stabilized housing are not literally left out in the cold. Accordingly, I respectfully dissent.

GONZALEZ and BUCKLEY, JJ., concur with SAXE, J.; MAZZA-RELLI, J.P., and ACOSTA, J., dissent in a separate opinion by ACOSTA, J.

Order and judgment (one paper), Supreme Court, New York County, entered July 12, 2007, reversed, on the law, without costs, the petition denied, DHCR's determination permitting respondent Chelsea Partners not to renew petitioner's rent-stabilized lease confirmed, and the proceeding dismissed.