This opinion is uncorrected and subject to revision before publication in the New York Reports.
----------------------------------------------------------------

No. 39
In the Matter of Perlbinder
Holdings, LLC,
            Appellant-Respondent,
        v.
Meenakshi Srinivasan, &c., et
al.,
            Respondents-Appellants.


            Howard Grun, for appellant-respondent.
            Jane L. Gordon, for respondents-appellants.


PIGOTT, J.:

        At issue in this appeal is whether petitioner
Perlbinder Holdings LLC, by virtue of its reliance on an
erroneously issued permit for a large outdoor advertising sign
that was later revoked by the New York City Department of
Buildings (DOB), acquired a vested right to maintain the sign on

- 1 -

its property.  We hold that it did not.  We further conclude that the proper procedure to resolve the issue of its asserted good-faith reliance on the erroneously issued permit is an application for a zoning variance.  Therefore, we modify the order of the Appellate Division and dismiss the petition.

I.

Petitioner is the owner of property located at 663-669 Second Avenue in Manhattan.  For many years, petitioner maintained a large illuminated advertising sign on the side of its building at that location.  The DOB had issued a permit for that sign in 1980.  Thereafter, the New York City zoning regulations were amended in such a way that no longer permitted the advertising sign.  The original sign was, however, "grandfathered" in as a legal, non-conforming use.

In May 2002, petitioner sought, and the New York City Board of Standards and Appeals (BSA) granted, a zoning variance for the construction of a new 34-story mixed-use building on the property.  The BSA also approved petitioner's request to relocate the original sign, with slightly modified dimensions, as part of petitioner's plans to construct the mixed-used building on the property.  To date, petitioner neither built the mixed-use building nor constructed the advertising sign approved under the 2002 zoning variance.

In 2008, the DOB issued petitioner a violation for its failure to maintain the then-vacant building on which the

original sign was affixed.  After a July 2008 emergency declaration, the building was demolished, and, with it, the sign.

Petitioner then filed two applications with the DOB to erect a new support structure and a new sign.  The DOB granted the support structure application, but objected to the proposed sign on the bases that the new sign was different than the original sign because it was a double-sided sign; it was not located in the same position as the original sign; and the replacement sign was 25 feet lower than the original.  The DOB noted that, in order to be "grandfathered" in as a legal non-conforming use the new sign must be single-sided and in the same location as the original sign.

Petitioner sought reconsideration of its application. The then-Manhattan Borough Building Commissioner overruled DOB's objections and approved the new sign permit, stating: "OK to accept prior sign as grandfathering of existing non-conforming sign.  OK to accept lower sign as no increase in degree of noncompliance."  Shortly thereafter, DOB issued a permit for the installation of petitioner's new sign on the support structure.

In the spring of 2010, after petitioner had installed the structure and new sign, the DOB audited its earlier permit approvals.  In the course of that audit, the DOB determined that petitioner's sign had not been lawfully approved.  Accordingly, it revoked the permits for both the support structure and the sign, determining that its prior approval was improperly granted.

Petitioner appealed the DOB's determination to the BSA. Following a public hearing, the BSA affirmed the determination of the DOB, agreeing that the sign violated the Zoning Resolution. It further concluded that any right to continued use of the advertising sign as a non-conforming use had been lost since that use had been discontinued for more than two years when the original sign was demolished along with the building in July 2008. The BSA noted that petitioner's good-faith reliance on the DOB's approvals did not estop the agency from enforcing its ordinances.

## II.

Petitioner then commenced this CPLR article 78 proceeding to, among other things, annul the BSA's resolution and reinstate the permits revoked by the DOB, thereby restoring petitioner's right to maintain the new sign on its property. Petitioner argued that it had relied in good faith on the Commissioner's approval and the subsequently-issued permits in expending substantial funds to install the new sign.

Supreme Court denied the petition and dismissed the proceeding. The court found the BSA's determination upholding the revocations rational and not arbitrary or capricious. The court also rejected petitioner's argument that the DOB or the BSA should have considered its good-faith reliance on the permits issued by the DOB, concluding that estoppel is not available against an agency even when correction of its prior erroneous

determination leads to harsh results.

The Appellate Division reversed Supreme Court's judgment and "remanded to BSA for further proceedings consistent" with the court's decision (114 AD3d 494 [1st Dept 2013]).[1] The Appellate Division noted that the BSA's conclusion that "it could not consider the issue of [petitioner's] good faith under its appellate jurisdiction . . . was incorrect" (id.). Thus, the court determined that remand to the BSA was required so that it could determine, "in its appellate capacity . . . whether [petitioner] is entitled to a variance applying the factors set forth in City Charter section 666 (7)" (id.). The court further determined that, "[b]ecause the record was not fully developed as to these criteria . . . the BSA shall permit the parties to make further submissions" (id.). Moreover, the Appellate Division determined that the record established "as a matter of law" that petitioner relied in good-faith upon the 2008 determination by the Manhattan Borough Building Commissioner to grant its permit applications (id. at 494-495). Thus, the court concluded that in deciding whether to grant a variance on remand, the BSA must consider, along with the section 666 (7) factors, petitioner's "good-faith reliance" (id. at 495, citing Matter of Pantelidis,

_____

[1] The Appellate Division had issued a prior order granting the petition and directing the DOB to reinstate the permits and vacate the fines that had been imposed in connection with the sign (110 AD3d 611 [1st Dept 2013]). However, upon reargument, the Appellate Division recalled and vacated that order and substituted in its place the order now before us.

43 AD3d at 314). Lastly, the court rejected petitioner's argument that no variance was required, reasoning that the new sign is in a different location and position than the original.

This Court granted both petitioner and the City leave to appeal.

### III.

The zoning resolution did not permit display of advertising signs in the zoning district at issue and the new sign did not qualify as a grandfathered replacement. Thus, the determination that the 2008 permit was invalid and the BSA's action in revoking the invalid permit were rational (see Matter of Parkview Assoc. v City of New York, 71 NY2d 274, 282 [1988]).

However, petitioner maintains that it is entitled to maintain the sign because it acquired a common-law vested right to do so based on the fact that it had spent substantial funds to erect the new sign and did so in good-faith reliance on the 2008 permit.

We recently held that "[a]n owner of real property can acquire a common law vested right to develop property in accordance with prior zoning regulations when, in reliance on a '*legally issued permit*,' the landowner 'effect[s] substantial changes and incur[s] substantial expenses to further the development' and '[t]he landowner's actions relying on [the] *valid permit* [are] so substantial that the municipal action results in serious loss rendering the improvements essentially

valueless'" (<u>Matter of Exeter Building Corp. v Town of Newburg</u>, --- NY3d --, 2016 NY Slip Op 00999 [decided February 11, 2016] [emphasis added] [citations omitted]).

Vested rights cannot be acquired, however, where there is reliance on an invalid permit (<u>see</u> <u>Matter of Natchev v Klein</u>, 41 NY2d 833 [1977]; <u>see</u> <u>also</u> <u>Matter of Perrotta v City of New York</u>, 107 AD2d 320, 325, <u>affd for reasons stated</u>, 66 NY2d 859 [1985]). When a permit is wrongfully issued in the first instance, the vested rights doctrine does not prevent the municipality from revoking the permit to correct its error. Because the 2008 permit was unlawfully issued, petitioner could not rely on it to acquire vested rights.

IV.

For its part, the City argues that the Appellate Division erred in remanding the case for a variance determination and in ruling "as a matter of law," that petitioner has acted in good-faith. It contends that the determination of good-faith in seeking relief from a Zoning Resolution should be decided by the DOB or the BSA in the event petitioner submits a variance application. We agree.

Petitioner admits that it never sought a variance and is not seeking one now. It was the Appellate Division, *sua sponte*, that decided petitioner's appeal was "in essence, a request for a variance" under New York City Charter § 666 (7) and based its remand on that Charter provision.

Charter § 666 (7) provides the BSA with the general authority to vary or modify a rule or regulation relating to a wide range of areas, including the construction of buildings or structures.  Similarly, section § 666 (6) (a) separately authorizes the BSA to broadly hear and decide interpretative "appeals" from decisions of the DOB.

Subdivision 5 of § 666, on the other hand, pertains to zoning variances and provides that BSA "shall have [the] power . . . [t]o determine and vary the application of the zoning resolution as may be provided in such resolution and pursuant to section [668]."  Section 668 sets forth specific mandatory procedures by which the BSA "shall review applications to vary the zoning resolution and applications for special permits." Among other things, section 668 requires the filing of an application, notification to the public, a public hearing (or waiver thereof), determination whether an environmental impact statement is required, and a hearing by BSA.  Thus, the language of section 666 (5) of the Charter is specifically limited to applications for a variance of a Zoning Regulation.

Under principles of statutory construction, whenever there is a general and a specific provision in the same statute, the general applies only where the particular enactment is inapplicable (see McKinney's Cons Laws of NY, Book 1, Statutes, § 238).  Thus, the interpretative appeal process necessarily applies in instances other than a zoning variance and does not

extend to matters requiring a variance, for which different standards and different procedures are set forth.  The Appellate Division therefore erred in remanding the matter for a determination of a variance application pursuant to Charter § 666 (7).

                                V.

        Finally, a determination as to petitioner's good-faith reliance should not be resolved by the Court, but rather by the administrative agency, should petitioner seek a variance (see generally Jayne Estates, Inc. v Raynor, 22 NY2d 417 [1968]).

        Accordingly, the order of the Appellate Division should be modified, with costs to the City of New York respondents, by dismissing the petition in its entirety and, as so modified, affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order modified, with costs to the City of New York respondents, by dismissing the petition in its entirety and, as so modified, affirmed.  Opinion by Judge Pigott.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein, Fahey and Garcia concur.

Decided March 24, 2016